SHIPMAN *v.* STATE LIVE-STOCK SANITARY COMMISSION.

1. MANDAMUS—SUBORDINATE BODIES—DISCRETIONARY POWERS.
   Where a subordinate body has been vested by the legislature with the right to exercise its judgment, and with the power to determine questions of fact, *mandamus* may lie to compel the body to act, but will not lie to compel it to act in a particular way.

2. LIVE-STOCK COMMISSION—CONDEMNATION OF ANIMALS—AWARD OF DAMAGES—REVIEW IN COURTS.
   The state live-stock sanitary commission, by the terms of the act under which it is organized (3 How. Stat. chap. 61*a*), has the exclusive right to determine whether animals are so diseased as to require their destruction, and to ascertain, for the purpose of compensation to the owner, the value of animals condemned; and its findings will not be reviewed by the courts.

3. SAME—MEASURE OF DAMAGES.
   In such case, the value of the animals in their diseased condition is the measure of the owner's right to compensation.

4. SAME—WRONGFUL ACT OF COMMISSION—LIABILITY OF STATE.
   If the commission condemns, as diseased, animals that are sound, the State is not liable for the wrongful act; the owner's remedy, if any, being against the members of the commission.

5. SAME—DESTRUCTION OF SOUND ANIMALS.
   As to the effect of that provision of the act which authorizes the destruction of sound animals because of their exposure to contagious disease,—*quære.*

*Mandamus* by Ozias W. Shipman to compel the State Live- Stock Sanitary Commission to appraise certain condemned cattle at their market value. Submitted November 4, 1897. Writ denied January 18, 1898.

In July, 1896, relator owned a herd of Jersey cattle, 62 in number, and mostly cows and heifers. The respondent, being informed that there was reason to believe that the herd was affected with tuberculosis, made an examination, found evidences of the existence of the disease, and on August 15th and 16th the entire commission met with the state veterinarian, and applied to 47 of the animals what is known as the "tuberculin test." It was decided that 28 were diseased, and they were slaughtered by the order of the commission, which appraised the damage at $1 per head, and turned the carcasses over to the relator. He declined to accept the damages awarded, and filed a petition for the writ of *mandamus.* The petition sets forth his ownership of the herd; that the cattle were sound and healthy when he purchased them; that they were condemned by the commission, and slaughtered; that the market value of the cattle so slaughtered was $3,000; that, by reason of this action, the market value of the rest of the herd was reduced to $500; and prays for the writ of *mandamus* to compel the respondent to appraise the cattle at the market value. The answer admits the action taken by the commission; denies that the cattle slaughtered were of any greater value than the sum awarded; alleges that, after the application of the tuberculin test, two of the animals were slaughtered, a *post mortem* examination made, and both found to be extensively affected with tuberculosis; that, at the request of the relator, the rest of the cattle were shipped to Detroit for the purpose of slaughter and *post mortem* examination; that such examination clearly and conclusively disclosed that each of the animals was extensively affected with the disease. A replication was filed, traversing the material allegations of the answer.

The act organizing the respondent is found in 3 How. Stat. chap. 61*a*, and is entitled:

"An act to provide for the appointment of a state live-stock sanitary commission and a state veterinarian, and to prescribe their powers and duties, and to prevent and suppress contagious and infectious diseases among the live stock of the State." Act No. 182, Pub. Acts 1885.

The general duty of the commission is found in section 4:

"It shall be the duty of the commission to protect the health of the domestic animals of the State from all contagious or infectious diseases of a malignant character, and for this purpose it is hereby authorized and empowered to establish, maintain, and enforce such quarantine, sanitary, and other regulations as it may deem necessary."

Section 7 provides for the examination by the commission of animals supposed to have any infectious or contagious disease; for quarantining such animals when necessary; and for their destruction whenever, in the opinion of the commission, it shall become necessary to prevent the further spread of the infectious or contagious disease. Section 9 reads as follows:

"Whenever the commission shall direct the killing of any domestic animal or animals, it shall be the duty of the commissioners to appraise the animal or animals condemned, and in fixing the value thereof the commissioners shall be governed by the value of said animal or animals at the date of appraisement."

Said commission is then authorized to issue a certificate to the owner of its appraisal, which, when approved by the governor, is paid by the State.

*Fred A. Baker*, for relator.

*Fred A. Maynard*, Attorney General, for respondent.

GRANT, C. J. (*after stating the facts*). The position of the relator is thus stated by his counsel:

"If the State desires to destroy cattle which are in good health, simply because they cannot stand the tuberculin

test, it must compensate the owner for their full market value at the time; that is, just before they are subjected to the test.    If the court will permit this case to be tried before a jury, we will bring out, with competent expert witnesses, all the known facts in regard to the disease and the tuberculin test, so as to enable the court to pass an intelligent judgment on the case, and we firmly believe that the result of such an investigation will show: (1) That tuberculosis is not a contagious or infectious disease, within the meaning of the Michigan live-stock sanitary act.    (2) That the tuberculin test is not sufficiently reliable to warrant the killing of cattle without compensation, under the police power of the State.    (3) That the tuberculin test does not furnish sufficient proof that the animals tested will ever have the disease, or be capable of communicating it, to justify the State in destroying them, except upon the condition that full compensation is made, as for perfectly healthy cattle."

The language of the statute is unmistakable.    It provides for the destruction of and compensation for diseased, and not sound, cattle.    The commission is the sole tribunal to determine whether the animals are diseased, and to ascertain the value, and is to be governed by the value at the date of appraisal.    The only appellate jurisdiction provided for by the statute is the governor, whose approval of the action of the commission is necessary.    If the governor should refuse to approve the award of the commission, courts could not interfere to compel him to approve the finding.    *Sutherland* v. *Governor*, 29 Mich. 320; *State* v. *Stone*, 120 Mo. 428 (41 Am. St. Rep. 705). It follows that, if the governor should refuse to approve an award directed by this court, the court would be powerless to enforce its judgment.    In such cases courts will not interfere.    The law has placed this matter in the hands of the commission and the governor.    Their action is final.    *Cicotte* v. *County of Wayne*, 59 Mich. 509. Where a subordinate body has been vested by the legislature with the right to exercise its judgment, and with the power to determine questions of fact, *mandamus* may lie to compel the body to act, but will not lie to compel it to act in a particular way.

There is no sound reason in saying that under this statute the relator is entitled to receive from the State the value of his property at what it would be if unaffected by disease. This would be judicial legislation, because the statute does not authorize the destruction of sound cattle. The precise question was before the court of appeals in New York in *Tappen* v. *State*, 146 N. Y. 44, wherein it was held, under a similar statute, that a party was entitled only to the actual value in the diseased condition. If the commission condemns cattle which are not diseased, the State is not liable for the wrongful act of the commission. *Gilboy* v. *City of Detroit, ante,* 121. Relator's remedy in such case, if he has any,—and upon this we express no opinion,—is against the members of the commission, and not against the State. *Miller* v. *Horton,* 152 Mass. 540 (10 L. R. A. 116, 23 Am. St. Rep. 850); *Pearson* v. *Zehr,* 138 Ill. 48 (32 Am. St. Rep. 113); *Newark, etc., R. Co.* v. *Hunt,* 50 N. J. Law, 308.

It is proper to say that we have not before us that provision of the law under which sound cattle may be killed because of exposure to contagious disease.

The writ is denied.

The other Justices concurred.