[S. F. No. 15523. In Bank.—April 27, 1936.]

A. LERTORA, Respondent, v. RAY L. RILEY, Controller, etc., et al., Appellants.

EUGENE BIGGIO, Respondent, v. RAY L. RILEY, Controller, etc., et al., Respondents.

U. S. Webb, Attorney-General, Ralph O. Marron and Darwin Bryan, Deputies Attorney-General, for Appellants.

Arthur H. Barendt, J. R. Klawans and James, Brann & Rowe for Respondents.

CURTIS, J.—An order of transfer was made in these cases in order that we might give further consideration to the two questions which formed the basis of the opinion of the District Court of Appeal. The first of these questions was whether the state under the Bovine Tuberculosis Law (Stats. 1931, p. 2392) of the state is liable for animals which did not react to the tuberculin test, killed under the direction of its regularly and lawfully appointed officers. The evi-

dence in this case shows that a considerable number in the herd of each of the respondents did not respond to said test or were killed without the test being applied to them. After more mature consideration of this question, we are satisfied with the conclusion therein reached by the District Court of Appeal. ■ The Bovine Tuberculosis Law expressly limits the recovery for slain animals to those which were infected with tuberculosis as determined by the application of the test hereinbefore mentioned. ■ If the officials of the state wrongfully slaughter animals which did not respond to that test they are guilty of a tort and are responsible to the owners of the animals illegally killed, but the state is not liable for the unauthorized act of its officers, unless expressly provided by statute, and neither the Bovine Tuberculosis Law nor any other statute to which our attention is called imposes such liability upon the state.

The second question which the District Court of Appeal holds to be decisive of respondents' right to recover in these actions relates to the presentation of their claims against the state. This question is discussed at length by the District Court of Appeal, and we are satisfied that its conclusion thereon is in harmony with the previous decisions of this court upon that question.

We therefore find ourselves in accord with the opinion of the District Court of Appeal, heretofore rendered in these actions, and we approve the same and adopt it with a slight deletion as the opinion of this court. It is as follows:

"The trials of the two actions herein involved were consolidated. Separate findings were made by the court but they are in all essentials the same except as to the amounts of money embraced in the claims of the respective petitioners who are respondents herein.

"The trial court granted each of the respondents a peremptory writ of mandate commanding the state controller and the state board of control to proceed forthwith in the performance of all acts necessary to indemnify each of the respondents in a certain sum, being one-third of the total appraised value of his cattle, as provided for the indemnity of owners of cattle condemned under the Bovine Tuberculosis Law. (Stats. 1931, p. 2392.) The sum required to be paid in the case of respondent Lertora is $6,668.07, and in the case

of respondent Biggio, the sum of $1,757.43, both with legal interest.

"About November 15, 1932, in accordance with the provisions of the Bovine Tuberculosis Law, the director of agriculture of the state of California declared the county of Marin a tuberculosis control area. Respondents, during the year 1932 became the owners on separate ranches, but under similar conditions, of a large number of adult cattle, ostensibly for dairy purposes. Many of these were purchased at low prices, and were cattle which had been culled or rejected from other herds.

"In December, 1932, veterinarians, representing the department of agriculture of the state of California and the bureau of animal industry in the department of agriculture of the United States government, went upon the lands of the respective petitioners and subjected a large number of cattle thereon to the tuberculin test prescribed by the Bovine Tuberculosis Law. From 85 per cent to 90 per cent of the Lertora herd of 506 cattle, and about 67 per cent of the Biggio herd of 134 cattle reacted to the tuberculin test, which is a standard test recognized by veterinarians and by the California statute. Shortly after the tests were made all of the adult cattle in the Lertora and Biggio herds were branded as tuberculous, and condemned, appraised and slaughtered under the direction of agents of the department of agriculture. In addition to the adult cattle above, about 162 head of calves belonging to Lertora were branded as tuberculous and condemned and slaughtered. None of them were tested or given a physical examination for the purpose of determining whether or not they were tubercular, but apparently they were condemned and ordered slaughtered under some kind of an agreement or understanding between the veterinarian in charge of the testing operations and the petitioner Lertora that they should be sold for veal, and an indemnity of $12 per head should be paid, dependent upon whether or not the carcasses should show tubercular lesions upon a post mortem examination.

"The petitioners and respondents filed separate claims for the respective amounts hereinabove stated with the state controller about July 22, 1933. These claims were rejected by the controller upon the ground that the respective claims did not comply with the rules and regulations of the state board

of control governing the presentation and audit of claims against state funds and appropriations, and were not legal or proper demands against the state of California. Thereafter the claims were referred to the state board of control, which, on December 15, 1933, disallowed each of the claims.

"To the verified petitions of the petitioners, the appellants filed unverified answers in which they denied generally and specifically all of the allegations of the petition. As a second defense, they charged a conspiracy between the petitioners and certain employees and officers of the department of agriculture of the state of California to defraud the state and and the government of the United States. As a third defense, the respondents alleged that the claims as presented did not comply with rules 3 and 4 of the rules and regulations adopted by the state board of control, in that they were not accompanied by an affidavit of the officer directly responsible for the indebtedness, or approved by the state officer in the manner provided by rule 4 of such regulations.

"The trial court found that all of the allegations of the respective petitions were true; that all of the allegations of the answers were untrue, with certain minor exceptions, and further found that R. E. Duckworth, veterinarian of the state department of agriculture, did test some of the cattle in the herds of petitioners, and did, without the knowledge of petitioners, subsequently brand substantially all of the cattle in said herds as reactors, although in fact a great number of the cattle in said herds so tested and branded failed to react to the tuberculin test so administered, and although in fact the tuberculin test was not administered to any of the calves of petitioner Lertora in his herd so branded.

"The trial court's finding as to the alleged conspiracy cannot be disturbed, but other questions are involved in the appeal which require more serious consideration. The appellants contend that the officers of the state of California are not authorized to pay indemnity under the Bovine Tuberculosis Law for cattle which have not reacted to the tuberculin test, or which have not been adjudged tuberculous upon physical examination; that payment under such conditions would be a gift of public money contrary to the provisions of section 31 of article IV of the Constitution; and further, that the controller and the state board of control are prohibited by law from authorizing the payment of a claim

against the state when the same has not been presented for payment in accordance with law and the rules and regulations of the board of control. These issues were properly before the trial court upon the answers of the appellants. The answer of an officer of the state of California to a complaint or petition need not be verified. (*Seckels* v. *Department of Industrial Relations,* 98 Cal. App. 647 [277 Pac. 497].)

"The Bovine Tuberculosis Law provides, in part, as follows: 'Section 9. (c) Disposition of reactors. Payment to owner of reactor. Any bovine animal, in a tuberculosis control area, reacting positively to a tuberculin test conducted by a representative of the federal or state department of agriculture, or adjudged tuberculous upon physical examination by said representative, shall immediately be segregated from other bovine animals which are not reactors. Within thirty days after the appraisal of said reacting bovine animal, as provided for herein, it shall be slaughtered under the direction of the department of agriculture; and in consideration of the fact that the eradication of bovine tuberculosis is beneficial to public health and welfare, before said animal is slaughtered, its value shall be determined by appraisement by a representative of the said department of agriculture or a representative of the bureau of animal industry of the United States department of agriculture, and the owner or his agent. In case of failure to agree on the valuation, said reacting bovine animal shall be appraised by the chief appraiser of said department of agriculture or his representative. In either event, the value determined shall be final. Except as hereinafter provided, the state of California shall pay to the owner of any reacting bovine animal slaughtered under the provisions of this section one-third of the difference between the appraised value of such reacting bovine animal and the proceeds from the sale of the salvage, and the owner shall also receive the proceeds from the sale of the salvage, provided that in no case shall any payment by the state of California, hereunder, exceed thirty-five dollars ($35) for any grade animal or seventy dollars ($70) for any purebred animal, and no payment shall be made unless the owner has complied with all the provisions of this act relating to tuberculosis control areas and the regulations promulgated by the department of agriculture for its enforcement.'

''The repeated use of the words 'reacting bovine animal' very certainly indicates that the legislature did not contemplate the payment of indemnity for healthy animals. Contact with reacting animals or exposure to diseased animals is not defined or fixed by the act as a ground for condemning or for awarding indemnity for slaughtered animals. The wording of the law and considerations of public policy justify payment of indemnity only in cases of cattle which are found to be reactors or adjudged, after a physical examination, to be actually infected with tuberculosis, and the conclusion must be that the officers of the state are authorized to pay indemnity only for diseased, and not for sound animals. The weight of authority in other jurisdictions, involving the construction of similar laws, is that the destruction of sound or healthy cattle under color of police regulation, or for the benefit of public health, is without authority of law and cannot form the basis of a claim or action against the state. (*Shipman* v. *State Live-Stock Sanitary Commission,* 115 Mich. 488 [73 N. W. 817].) In *Houston* v. *State,* 98 Wis. 481 [74 N. W. 111, 42 L. R. A. 39], the court said: 'The law is well established that neither the state nor the United States is answerable in damages to an individual for an injury resulting from the alleged misconduct or negligence or tortious acts of its officers or agents.' (See, also, *Miller* v. *Horton,* 152 Mass. 540 [26 N. E. 100, 23 Am. St. Rep. 850, 10 L. R. A. 116].) The legislature of California did not authorize the misconduct of its officers who condemned the petitioners' cattle without test or examination. In *Gibbons* v. *United States,* 75 U. S. (8 Wall.) 269 [19 L. Ed. 453], the Supreme Court of the United States said: 'But it is not to be disguised that this case is an attempt, under the assumption of an implied contract, to make the government responsible for the unauthorized acts of its officer, those acts being in themselves torts. No government has ever held itself liable to individuals for the misfeasance, laches, or unauthorized exercise of power by its officers and agents. In the language of Judge Story, ''it does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs, since that would involve it in all its operations in endless embarrassments, and difficulties, and losses, which would be subversive of the public interests''.'

"The testimony of Dr. R. E. Duckworth was that he tested 134 head of cattle in the Biggio herd; that 89 reacted, and that he branded the remaining 45 as reactors without making a physical examination, and that such action was taken upon the instructions of a superior officer whose office was in Sacramento; that in the Lertora herd, 85 to 90 per cent reacted, and all were branded, besides 160 to 170 calves which were not tested at all, and of which no physical examination was made. No testimony was offered, or is found in the record to rebut the statements of Duckworth as to the procedure adopted in testing and branding the cattle or Lertora calves, and the evidence does not support the finding of the court that all of the allegations of the petitioners' petitions are true. ■ The point is made by petitioners and respondents that the trial court found the veterinarian's acts were done without the knowledge of the petitioners. Any person dealing with a state agency is chargeable with knowledge of all of the powers possessed or which may be legally exercised by the officers in charge of such agency, and all acts of such officers which go beyond the scope of the power vested in the officer exercising the functions of such agency are void, and knowledge must be presumed to be had, not only of the extent of the power, but also of the mode of its exercise. (*Bottoms v. Madera Irrigation District,* 74 Cal. App. 681 [242 Pac. 100].)

■ "In the exercise of the police power, the use of property may be restricted or it may be destroyed, and no legal liability arises to compensate the owner therefor. (*Patrick* v. *Riley,* 209 Cal. 350 [287 Pac. 455].) Under such circumstances the burden is upon the person seeking indemnity to present clear evidence of convincing force that the property destroyed was such as is contemplated by the statute.

"The Bovine Tuberculosis Law provides for the immediate segregation of reacting animals, and not for the destruction of nonreactors or those coming in contact with reactors. The statute does not define the destruction of healthy animals as necessary for the preservation of the public health, and the destruction of such animals was not within the jurisdiction of the department of agriculture or its officers, and would not be for a public purpose as determined by the legislature; consequently the payment of an indemnity for such purpose

would, fall within the inhibitions of section 31 of article IV of the Constitution of California.

"In *Conlin* v. *Board of Supervisors,* 99 Cal. 17 [33 Pac. 753, 37 Am. St. Rep. 17, 21 L. R. A. 474], the court said: 'The legislature is to be regarded as holding the public moneys in trust for public purposes, and this limitation of the Constitution is directed against its disposal of these funds except in accordance with such purposes. All those moral considerations or demands resting merely upon some equitable consideration or idea of justice, which in an individual acting in his own right would be upheld, are insufficient as a basis for making an appropriation of public moneys. An appropriation of money by the legislature for the relief of one who has no legal claim therefor must be regarded as a gift within the meaning of that term, as used in this section, and it is none the less a gift that a sufficient motive appears for its appropriation, if the motive does not rest upon a valid consideration.'

"It is fundamental that the expenditure of public funds must be for a public as distinguished from a private purpose. (*City of Oakland* v. *Garrison,* 194 Cal. 298 [228 Pac. 433]; *Patrick* v. *Riley, supra.*)

"The claims of the respective petitioners were in substantially the same form, and were verified by the claimants, but were not accompanied by the affidavit of any officer of the department of agriculture, or approved by the director of agriculture or his deputy.

"Section 9 (g) of the Bovine Tuberculosis Law provides as follows: 'Each claim against the state for payment in consideration for the slaughter of any reacting bovine animal shall be presented to the state controller, audited and paid out of appropriations or funds available therefor, in accordance with law.'

"Section 664 of the Political Code provides in substance that the board of control shall adopt general rules and regulations governing such matters as are specifically committed to the jurisdiction of said board, and governing the presentation and auditing of claims against the state, and in accordance with such general rules and regulations, the state controller shall audit such claims before drawing his warrant therefor as prescribed by law, and any person having a claim against the state for which an appropriation has been

made, may present the same to the state controller in the form and manner prescribed by such general rules and regulations.

"It appears that in conformity with section 664, the board of control adopted certain rules, among which is rule 3, as follows: 'Affidavit. Every claim, unless otherwise provided by law, must be accompanied by affidavit of the other directly responsible for the indebtedness to the effect that the services were actually rendered, and the indebtedness incurred solely for the benefit of the state in accordance with the provisions of law;' and rule 4, which provides that each claim must be approved by the state officer or his chief deputy, or in the case of boards and commissions, by a majority of the members, or by a finance committee duly authorized to act by such board or commission, except as otherwise provided by law."

"Section 669 of the Political Code provides in part as follows: 'The controller must not draw his warrant for any claim until it has been audited by him in conformity with the general rules and regulations adopted by the board of control governing the presentation and audit of claims, and when hereafter, the controller is directed to draw his warrant for any purpose, this direction must be construed as subject to the provisions of this section, unless the direction is accompanied by a special provision exempting it from the operation of this section.'

"These sections of the Political Code have the effect of incorporating in the law of the state the rules of the board of control so far as they relate to matters specifically committed to the jurisdiction of that board. Section 9 (g) of the Bovine Tuberculosis Law simply says that claims for indemnity shall be presented to the state controller, audited and paid out of appropriations available therefor in accordance with law. It provides no procedure for such payments, and the law governing the same is found in sections 664 and 669 of the Political Code together with the rules of the state board of control. The legal force and standing of those rules cannot be ignored in the absence of a showing of capricious acts on the part of the state controller or the board of control, or in the absence of a showing of wilful or unreasonable refusal on the part of the officers of the department of agriculture which had the duty of enforcing the Bovine Tuberculosis Law, to execute an affidavit. The wisdom of the

requirement of the board of control expressed in its rules, is demonstrated in the instant case. The tuberculosis law provides for various restrictions on the payment of indemnity. The animals destroyed must be reacting animals, or adjudged to be tuberculous upon physical examination; no indemnity shall be paid for animals brought into a tuberculosis control area which react to a tuberculin test applied within 30 to 90 days, or brought into such area contrary to any law, or the rules or regulations of the state or federal department of agriculture; or for any reacting animal until the premises where said animal had been kept, have been cleaned and disinfected in a manner approved by the department of agriculture; or for any reacting animal which has not been slaughtered within 30 days. The respective claims presented by the petitioners neither negative nor affirm the existence of any of these conditions, or show their compliance with such conditions. Furthermore, it appears that as to a large number of the calves condemned and slaughtered, there was an undefined agreement or understanding between the owner and the examining veterinarian that indemnity at the rate of $12 per head for the calves would be paid dependent upon whether or not the carcasses showed tubercular lesions upon a post mortem examination. Appraisal must be made before slaughter, and must be based upon the actual value of the animal at the time of appraisal and after a condemnation, and not upon its market value as a healthy animal. Assuming solely for the purposes of the case that such an agreement was made, and could form the basis of a legal claim, no report was returned in any form by the petitioners, or the officers of the department of agriculture of the result of such post mortem examination, if any was made. To hold that it was unnecessary to obtain an affidavit required by the rules of the board of control, would be to open the way to the practice of fraud upon the state. ■ The provisions of the tuberculosis law that the value determined by the appraisal should be final, means nothing more than that in the absence of fraud, the decision of the appraisers as to the value of the animals condemned and slaughtered could not thereafter be disputed by the owners, or by the state or its officers. The finality of the appraisement cannot operate to foreclose the state or its officers from contesting irregularities involved in the proceedings which form the basis of the

claim, or from disputing the legality of any matter involved therein other than the matter of valuation. In the claim presented to the controller, diseased cattle were not segregated from the healthy ones, and it was impossible for the officers to whom the claim was presented, to make any segregation from any information contained in the respective claims. The burden is upon the claimant to present a claim in compliance with the law. The appellants properly rejected each claim, and the trial court erred in granting a peremptory writ of mandate.

"In our opinion, it is unnecessary to discuss other minor points which have been presented in the various briefs."

The judgments are reversed.

Langdon, J., Shenk, J., Conrey, J., Seawell, J., and Waste, C. J., concurred.