[No. C006788. Third Dist. Nov. 16, 1990.]

DON CROWL, Plaintiff and Appellant, v.
COMMISSION ON PROFESSIONAL COMPETENCE OF THE
GOVERNING BOARD OF THE SAN JUAN UNIFIED SCHOOL
DISTRICT et al., Defendants;
SAN JUAN UNIFIED SCHOOL DISTRICT, Real Party in Interest
and Respondent.

**COUNSEL**

Marcus Vanderlaan for Plaintiff and Appellant.

Kronick, Moskovitz, Tiedemann & Girard and Linda S. Somers for Real Party in Interest and Respondent.

## Opinion

SIMS, J.—Education Code section 44938, subdivision (a), provides in relevant part: "The governing board of any school district shall not act upon any charges of unprofessional conduct unless at least 45 calendar days prior to the date of the filing, the board or its authorized representative has given the employee against whom the charge is filed, written notice of the unprofessional conduct, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his or her faults and overcome the grounds for such charge . . . ." (All further undesignated statutory references are to the Education Code.) The principal question in this case is whether a school district "act[s] upon any charges of unprofessional conduct" when it suspends a teacher from employment for unprofessional conduct. We conclude it does, so that the notice prescribed by section 44938 must be given.

Don Crowl, a permanent certificated employee of respondent San Juan Unified School District (District), was ordered suspended for 15 days without pay for unprofessional conduct (§ 44932, subd. (b)) following a hearing before the commission on professional competence (Commission).[1] Crowl filed a petition for writ of mandate in superior court. The trial court issued a statement of decision denying the petition and entered judgment for the District. We shall reverse the judgment and direct the trial court to grant Crowl's petition.

### FACTUAL AND PROCEDURAL BACKGROUND

#### A. *Facts*

We state the facts in the light most favorable to the judgment, resolving all conflicts in the evidence in favor of the District. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) We begin with the incident that precipitated the District's action, then discuss the earlier incidents mentioned in the District's notice to Crowl.

---

[1] Section 44932, subdivision (b), provides in pertinent part: "The governing board of a school district may suspend without pay for a specific period of time on grounds of unprofessional conduct a permanent certificated employee . . . pursuant to the procedures specified in Sections 44933, 44934, 44935, 44936, 44937, 44943, and 44944. This authorization shall not apply to any school district which has adopted a collective bargaining agreement pursuant to subdivision (b) of Section 3543.2 of the Government Code."

The parties agree that the collective bargaining agreement adopted by the District and its teachers' employee association does not provide for suspension proceedings other than those authorized by section 44932, subdivision (b).

1. *The Weber Incident.*

On September 12, 1986, a campus monitor requested Crowl's help in taking a student, Rudy German, to the principal's office. The monitor asked Crowl, who was the football and wrestling coach at San Juan High School, to help her because she had heard German might give her trouble.

As they were walking down the hall, the lunch bell rang and the halls became crowded. Students were standing at the end of the hallway in front of the door where the monitor was supposed to pick up German. Students were yelling and German appeared to be facing off as if to fight, but the monitor saw no one actually raising his fists.

Chris Weber, a friend of German, intended to back him up in any fight that might develop. When he went into the hallway with German, however, the students from whom German and Weber expected trouble were not there.

The monitor put her hand on German's shoulder and said "Come with me." He complied. As they were walking away, she told Crowl she no longer needed his help, but she didn't know whether he heard her.

Weber saw Crowl grab German and proceed down the hall with him, Crowl on one side of him and the monitor on the other. Weber followed and said twice: "Rudy didn't do fucking shit." Crowl turned around and ordered Weber to go to the principal's office. Weber said no. Crowl repeated the order and grabbed Weber's right forearm. Weber pulled his arm away. While Crowl's attention was distracted by another student, Weber walked away about 15 feet to his locker.

Crowl came up behind Weber at his locker. Weber still refused to come along with him, saying "Fuck you, I don't have to do what you want me to do." Crowl reached up and put his forearm around the front of Weber's neck.[2] Weber lost consciousness briefly. After Crowl and another teacher picked him up, Crowl took Weber to the principal's office with his arm held behind his back. (P)When Weber's father learned of the incident he called the sheriff's office, believing his son had been assaulted. Weber later transferred to another high school because his father did not feel it was safe for him to remain at San Juan.

Elizabeth Hofmann, the principal of San Juan High School, testified that a teacher should never use physical force on a student unless the student is

---

[2] In his testimony before the Commission, Crowl denied putting his arm around Weber's neck. However, he admitted having done so in a note to the principal written the day after the incident and in a meeting with the principal and the assistant superintendent a week later.

in danger of hurting himself, another student, or the teacher. It is inappropriate to grab students to detain them. If a student directs four-letter words at a teacher (a not uncommon event), the student may be suspended or otherwise punished, but such conduct does not entitle the teacher to use force against the student.

### 2. *The Coley Incident.*

In April 1985, Trevor Coley, a student in Crowl's class, refused to stop talking after Crowl told him several times to be quiet. Crowl called him out of class and the two walked down the hall to the boys' restroom. Crowl followed Coley into the restroom, shoved him against the wall, then put one hand around Coley's throat. He ordered Coley not to misbehave in his class again. He released Coley and they returned to the classroom. After class Coley went to the office complaining his neck hurt. Other people told him his neck was all red.[3] Coley was uncomfortable around Crowl for the next day or two.

Charles Berger, then principal of San Juan High School, sent Crowl a letter informing him that the use of physical force on a student was permissible only where the student's or the teacher's safety was in question and warning him that a second incident could result in disciplinary action.

### 3. *The Lorrekovich Incident.*

On November 18, 1983, Jacqueline Lorrekovich, a student at San Juan High School, celebrated her 14th birthday. Her sister's boyfriend Dave Raby was a member of the school wrestling team coached by Crowl. Raby had told her shortly before her birthday that the coach had a custom of spanking the team members on their birthdays and that they were going to "get her in there" on her birthday. She replied, "Oh, no you're not."

On Jacqueline's birthday her sister, Raby, and others took her to Crowl's classroom at lunchtime, promising her a "joke." After she entered the room, she was held down on a table while Crowl hit her several times with a paddle.[4] When the spanking ended Jacqueline ran out of the room in tears and called her mother to pick her up.

The next day it was painful for Jacqueline to sit down. She and her mother observed bruises from the spanking.

---

[3] Crowl testified he never put his hand on Coley's throat.

[4] She believed she was hit 14 times because it was her 14th birthday. Crowl and others testified it was only two or three times.

Mrs. Lorrekovich testified she had never given the District permission to use corporal punishment on her daughter.

Mrs. Lorrekovich wrote a letter to the principal complaining of Crowl's conduct. Crowl wrote a letter to the principal apologizing for his actions and promising they would not recur.

B. *Procedure*

On October 23, 1986, Crowl was served with a "Notice of Deficiencies/Unprofessional Conduct" pursuant to section 44938, informing him of the District's intention to take disciplinary action against him based on the three incidents discussed above. The Weber incident, the most recent, was termed the most significant. The notice concluded: "By law you cannot be suspended or terminated from your employment with this district for unprofessional conduct for at least 45 days from the issuance of this letter. *At the conclusion of that 45-day period, you can expect disciplinary action to be imposed which will consist of at least your suspension from employment with this district, if not your termination.* . . . At the end of the 45-day period, appropriate disciplinary action will be recommended to the school board." (Italics added.)

On January 14, 1987, Crowl was served with a notice of intention to suspend, listing the three charges mentioned in the previous notice as grounds for the disciplinary action.[5]

Crowl requested a hearing before the Commission. The District filed an accusation with the Commission in response.

Before the hearing began Crowl moved to dismiss the accusation on the grounds that the District had failed to comply with section 44938. The Commission denied the motion.

During the hearing, counsel for the parties stipulated that Crowl had totally remedied his conduct after receiving the original notice from the District and had committed no acts since then similar to those which prompted the notice.

After the hearing, the Commission issued a decision in favor of the District.

---

[5] Crowl was served with a second notice of intention to suspend approximately a week later, identical to the first except that it attached copies of sections of the Education Code.

Crowl filed a petition for writ of mandate in superior court. He later filed a "First Amended and Supplemental Petition for Writ of Mandate," which became the basis of the proceedings in the trial court.

The District filed an unverified answer to the amended petition.

After briefing was completed, the trial court held a hearing and took the matter under submission.

The trial court subsequently issued a tentative decision upholding the action of the Commission. The court held that the notice requirement of section 44938 was inapplicable to suspensions and that its independent review of the record showed the Commission's findings were supported by the weight of the evidence.

The trial court thereafter filed its statement of decision, which did not differ materially from the tentative decision. The trial court subsequently entered judgment for the District. This appeal followed.

Crowl contends principally: (1) the District's "Notice of Deficiencies/Unprofessional Conduct" was fatally defective for failure to comply with section 44938 because it made no reference to a remediation period in which Crowl could correct his behavior and overcome the grounds for the charges against him; (2) he fully remedied his conduct in the 45 days between receipt of that notice and the District's "Notice of Intention to Suspend," depriving the District of any justification to proceed with the suspension. In addition he raises claims of violations of due process and of good faith and fair dealing by the District; he contends that the District's failure to verify its answer to his petition required the trial court to accept all the allegations of the petition as true, and it erred by not doing so; and he asserts that the judgment was not supported by substantial evidence.

The District replies to Crowl's main contentions as follows: (1) the notice requirement of section 44938 does not apply to suspensions; (2) if it does, the "Notice of Deficiencies" complied with the requirements of the statute; (3) Crowl's remediation after receiving the "Notice of Deficiencies" is immaterial to his suspension.

We hold that section 44938 is applicable to suspensions and that the District's notice failed to comply with the requirements of the statute. We hold further that because Crowl corrected his conduct after receiving the original notice, no basis remained for suspension; therefore the Commission's and the trial court's findings in favor of suspension were not

supported by substantial evidence. In light of these holdings we need not reach Crowl's contentions the District violated his rights to due process and to good faith and fair dealing.

## DISCUSSION

### I

*The District Was Not Required to Verify Its Answer to the Writ Petition*

At the outset we must dispose of Crowl's claim of procedural error.

Citing Code of Civil Procedure section 1089, which provides generally that the return to a petition for writ of mandate must be made by demurrer, verified answer, or both, Crowl contends the District's failure to verify its answer to his petition requires us to accept all the allegations of the petition as true. ■ However, in a writ proceeding, as in a civil action, the answer filed by a school district, a public entity, need not be verified. (Code Civ. Proc., § 446; *Seckels* v. *Department of Indus. Relations* (1929) 98 Cal.App. 647, 648 [277 P. 497], followed in *Lertora* v. *Riley* (1936) 6 Cal.2d 171, 176 [57 P.2d 140].) *Central Bank* v. *Superior Court* (1978) 81 Cal.App.3d 592 [146 Cal.Rptr. 503], on which Crowl relies, is inapposite because the respondent there was not a public entity. (*Id.* at pp. 599-600.)

### II

*Section 44938 Applies to Suspensions*

■ Crowl contends the trial court erred in concluding notice under section 44938 is required only for dismissals, not suspensions. Crowl does not dispute that the notice given him was timely. Rather, he asserts he was wrongfully denied the opportunity for remediation required by section 44938. We agree with Crowl.

Before 1983 the Education Code did not provide for the suspension of teachers for unprofessional conduct. In 1983, as part of the Hughes-Hart Educational Reform Act (Sen. Bill No. 813 (1983-1984 Reg. Sess.) (Hughes-Hart Act); Stats. 1983, ch. 498), the Legislature introduced this form of discipline into the code by adding subdivision (b) to section 44932 (fn. 1, *ante*) and by adding the words "or suspension" to subdivision (c) of section 44938 (the notice statute), so that the latter subdivision now reads in pertinent part: " 'Unprofessional conduct' as used in this section means, and

refers to, the unprofessional conduct particularly specified as a cause for dismissal *or suspension* in Sections 44932 and 44933 and does not include any other cause for dismissal specified in Section 44932." (Amending language italicized.)

At the same time, the Legislature amended sections 44933, 44934, 44935, 44936, 44937, 44943, and 44944, which specified procedures to be followed in teacher dismissals, to include references to suspensions. (Stats. 1983, ch. 498, §§ 52-56, 58, 59, pp. 2084-2086.)

A. *The statutory language on its face requires section 44938 notice in suspension proceedings*

1. *Section 44938.*

In the wake of the 1983 amendments, subdivision (a) of section 44938 says a school board shall "not act upon any charges of unprofessional conduct" unless the statutory notice is given. In construing a statute, we look first to the language of the statute, giving effect to its plain meaning. (*Kimmel* v. *Goland* (1990) 51 Cal.3d 202, 208-209 [271 Cal.Rptr. 191, 793 P.2d 524].) Since a school board "acts upon" charges of unprofessional conduct when it suspends a teacher on that ground, the plain meaning of subdivision (a) of section 44938 requires that notice be given.

The plain meaning of subdivision (c) of section 44938, as amended, reenforces this conclusion. Subdivision (c) provides in pertinent part: " 'Unprofessional Conduct' as used in this section means, and refers to, the unprofessional conduct particularly specified as a cause for . . . suspension in Sections 44932 and 44933 . . . ." Hence, the "unprofessional conduct" requiring notice under section 44938 is, inter alia, the "unprofessional conduct" cited as a ground for suspension. Therefore, when "unprofessional conduct" is cited as a ground for suspension, notice must be given. That is what the statute says in a most straightforward way.

The District tenders several arguments that try to evade the plain language of the statute, but none is convincing.

Thus, the District contends the amendment of subdivision (c) of section 44938 to incorporate express references to suspension proceedings is insignificant because subdivision (c), is not a "substantive" provision. However, the language of subdivision (c) plainly refers back to a prior substantive portion of the same section. The only other use of the term "unprofessional conduct" in section 44938 is in subdivision (a), which, as previously noted, bars a school district from acting upon "any charges of unprofessional

conduct" unless it has given 45-day notice to the employee against whom the charge is filed. Construing the two provisions together, it is unmistakable that the reference to suspensions in subdivision (c) was intended to show that the substantive requirements set forth in subdivision (a) applied to suspensions as well as dismissals.

The District also contends section 44938 had been judicially construed before 1983 to apply only to dismissals (and to no other form of discipline), so that the Legislature's failure to amend the otherwise inclusive language of subdivision (a) should be considered an acquiescence in the original judicial construction. "Parts of an amended statute not affected by the amendment will be given the same construction that they received before the amendment." (*Brailsford* v. *Blue* (1962) 57 Cal.2d 335, 339 [19 Cal.Rptr. 485, 369 P.2d 13].)

However, contrary to the District's view, section 44938 had not been judicially construed before 1983 to apply to dismissals only and to no other form of discipline. The trial court stated that *McKee* v. *Commission on Professional Competence* (1981) 114 Cal.App.3d 718 [171 Cal.Rptr. 81] and *Tarquin* v. *Commission on Professional Competence* (1978) 84 Cal.App.3d 251 [148 Cal.Rptr. 522] had so construed section 44938. However, the question whether this provision might apply to forms of discipline other than dismissal was not presented in either case. Both cases involved dismissal proceedings under section 44932, and the courts had no occasion to consider whether notice might be required in any other disciplinary context. "It is axiomatic that cases are not authority for propositions not considered." (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].)

Construed singly or together, subdivisions (a) and (c) of section 44938 plainly require that 45-day notice be given before a school board suspends a teacher for unprofessional conduct.

### 2. *Section 44932.*

The District further asserts section 44932, subdivision (b) (fn. 1, *ante*), shows on its face that section 44938 notice is not required in suspension proceedings because this provision enumerates other specified procedures which must be followed but makes no mention of section 44938. This assertion is erroneous. The procedures listed in section 44932, subdivision (b), presuppose that the notice jurisdictionally required by section 44938 has already been given.

By its terms, section 44938 requires that its 45-day notice must be given before charges are filed. Thus, the statute says a school board shall not "act

upon" any described charges unless it gives notice "at least 45 calendar days prior to the *date of the filing*, . . ." (*Id.* subd. (a), italics added.) The "filing" is the filing of charges, since the notice must be given to "the employee *against whom the charge is filed*, . . ." (*Ibid.*, italics added.)

While section 44938 tells a school board what it must do before charges are filed, section 44932 tells a board what it must do after charges are filed. Section 44932, subdivision (b), states that suspensions are to be carried out "pursuant to the procedures specified in Sections 44933, 44934, 44935, 44936, 44937, 44943, and 44944." These provisions (aside from section 44933)[6] describe procedures to be followed *after* disciplinary charges have been filed.

Thus, section 44934 provides in relevant part: "*Upon the filing of written charges*, duly signed and verified by the person filing them, with the governing board of the school district, *or upon a written statement of charges* formulated by the governing board, *charging that there exists cause*, as specified in Section 44932 or 44933, for the dismissal or suspension of a permanent employee of the district, the governing board may, . . . give notice to the permanent employee of its intention to dismiss or suspend him or her at the expiration of 30 days from the date of service of the notice, unless the employee demands a hearing as provided in this article . . . ." (Italics added.)[7]

The remaining procedures specified in section 44932, subdivision (b) (§§ 44935-44937, 44943, 44944) coincide with or follow chronologically the issuance of the notice of intention to dismiss or suspend described in section 44934. Section 44935 provides that a teacher must be given the opportunity to comment in writing on any fitness report used in a dismissal or suspension proceeding "initiated pursuant to Section 44934." Section 44936 prescribes the method of serving a section 44934 notice. Section 44937 provides that a dismissal or suspension will take effect on expiration of the 30-day period specified in the section 44934 notice if the teacher waives a hearing on the charges. Section 44943 requires a school district to schedule such a

---

[6] Section 44933 provides in relevant part: "A permanent employee may be dismissed or suspended on grounds of unprofessional conduct consisting of acts or omissions other than those specified in Section 44932, but any such charge shall specify instances of behavior deemed to constitute unprofessional conduct." To the extent this provision describes any procedure, it necessarily describes whatever procedures are required for suspension; therefore it does not help to answer the question whether section 44938 notice is one of those procedures.

[7] Section 44934 does not expressly require that the school board's written statement of charges be *filed*. However, when this statute is read together with section 44938, filing of the written charges is necessarily implied in section 44934. "[W]hatever is necessarily implied in a statute is as much a part of it as that which is expressed." (*Johnston* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86].)

hearing if the teacher demands it. Section 44944 describes the conduct of the hearing. All these provisions apply in identical terms to dismissals and suspensions.

It therefore appears that there is a sensible, plausible explanation for the omission of section 44938 from the language of section 44932: since the latter statute is concerned with procedures to be used upon the filing of charges, it has no occasion to mention section 44938, which is concerned with procedures to be used before charges are filed. This construction of the two provisions does no violence to the language of either and reaches an altogether harmonious reconciliation of their purposes. ■ "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

■ Construed in its entirety, the statutory scheme on its face requires that notice be given under section 44938 before a teacher may be suspended.

B. *The legislative history of the Hughes-Hart Act shows that section 44938 was intended to apply to suspension proceedings*

■ A resort to the legislative history of a statute is appropriate only where the terms of a statute are ambiguous. (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 96 [255 Cal.Rptr. 670, 767 P.2d 1148].) "The significance to be accorded extrinsic evidence of legislative intention (or purpose) depends upon its capacity to resolve ambiguities in statutory language, . . ." (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal.Rptr. 697].) Assuming for the sake of argument the statutory scheme at issue here is ambiguous, its legislative history supports Crowl's construction. Two key items of the legislative history of the Hughes-Hart Act show the Legislature's intent that section 44938 notice, like all other procedures required in dismissal proceedings, was to be required in suspension proceedings as well.

1. *The Assembly Office of Research Report.*

■■■■ The Assembly Office of Research prepared a staff report to the members of the Assembly on the Hughes-Hart Act of 1983, before final

passage of the measure.[8] (Joint Sen.-Assem. Conf. Com. Rep. on Ed. (1983-1984 Reg. Sess.) July 11, 1983.) That report indicates the proposal to incorporate suspension provisions into the act arose at the conference committee stage. (*Id.* at pp. 1, 24.) As summarized in the report, the conference committee's proposed amendments would "Modify existing law regarding dismissal of teachers for unprofessional conduct or incompetency, to include actions initiated to suspend the teacher *under those notices, hearings and appeals allowed as part of the dismissal process* . . . ." (*Id.* at p. 24, italics added.) This report suggests the conference committee members' intent to treat suspensions like dismissals in all procedural respects, including section 44938 notice. The subsequent vote of the Assembly, without amendment of the pertinent provisions, fairly shows ratification of the Conference Committee's intent.

2. *The Legislative Counsel's Digest.*

The Legislative Counsel's Digest states with respect to the suspension provisions of the act as adopted by the Legislature: "This bill would permit school districts to impose, in cases of unprofessional conduct, the sanction of suspension for a specific period of time without pay, *subject to the same procedures as dismissal for cause* . . . ." (Legis. Counsel's Dig., Sen. Bill No. 813, 4 Stats. 1983 (1983-1984 Reg. Sess.) Summary Dig., p. 169, italics added.)

If the language of a statute is ambiguous, it is appropriate to examine the digest, as it sheds some light on legislative intent. (*California Teacher's Assn.* v. *Governing Board* (1983) 141 Cal.App.3d 606, 613-614 [190 Cal.Rptr. 453].) Here, the Legislative Counsel's construction of the provisions finally enacted harmonizes with the Assembly Office of Research report's interpretation of those provisions as proposed at the conference committee stage. The only reasonable inference to be drawn is that these provisions, as proposed and as enacted, at all times manifested the Legislature's intent to require the same procedures for suspensions as for dismissals—including initial notice pursuant to section 44938.

---

[8] The report was issued July 11, 1983. The Assembly approved a second conference committee report by vote on July 19, 1983. (4 Assem. J. (1983-1984 Reg. Sess.) p. 7520.) "[I]t is well established that reports of legislative committees . . . are part of a statute's legislative history and may be considered when the meaning of a statute is uncertain . . . [I]t is reasonable to infer that those who actually voted on the proposed measure read and considered the materials presented in explanation of it, and that the materials therefore provide some indication of how the measure was understood at the time by those who voted to enact it." (*Hutnick* v. *United States Fidelity & Guaranty Co.* (1988) 47 Cal.3d 456, 465, fn. 7 [253 Cal.Rptr. 236, 763 P.2d 1326].)

## III

*The Notice to Crowl Did Not Fully Comply With Section 44938, but the District Was Not Therefore Barred From Proceeding Against Him*

In addition to requiring written notice at least 45 days before charges of unprofessional conduct are filed, section 44938, subdivision (a), requires that the notice given must specify the nature of the unprofessional conduct "with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his or her faults and to overcome the grounds for such charge."

■ Crowl contends the notice given to him by the District was fatally defective because it did not tell him he could overcome the grounds for the charges against him by correcting his conduct; on the contrary, it told him that discipline would inevitably follow after 45 days. Therefore, in his view, the District had no jurisdiction to proceed on the charges against him. We agree the notice did not fully comply with section 44938 but disagree the District was therefore barred from proceeding on the charges.

In line with the plain language of section 44938, a long line of cases has held that the purpose of that statute, like that of its similarly worded predecessor provisions, is " 'to allow a permanent employee the chance to correct his or her conduct and thus overcome grounds for the charge.' " (*Bassett Unified School Dist.* v. *Commission on Professional Competence* (1988) 201 Cal.App.3d 1444, 1456 [247 Cal.Rptr. 865]; *Governing Board* v. *Commission on Professional Competence* (1985) 171 Cal.App.3d 324, 333 [217 Cal.Rptr. 457]; *Pittsburg Unified School Dist.* v. *Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 975 [194 Cal.Rptr. 672]; see also *McKee, supra,* 114 Cal.App.3d at p. 721 [construing former § 13407]; *Tarquin* v. *Commission on Professional Competence, supra,* 84 Cal.App.3d 251, 257-258 [same]; *Livermore Valley Joint Unified Sch. Dist.* v. *Feinberg* (1974) 37 Cal.App.3d 920, 922 [112 Cal.Rptr. 923] [same]; *Fresno City H. S. Dist.* v. *De Caristo* (1939) 33 Cal.App.2d 666, 674 [92 P.2d 668] [§ 5.652 of former School Code].) For this reason, giving written notice pursuant to section 44938 is a jurisdictional prerequisite to proceeding with any charges mentioned in that provision. (Cf. *McKee, supra,* 114 Cal.App.3d at p. 721; *Tarquin, supra,* 84 Cal.App.3d at pp. 257-258; *Livermore Valley, supra,* 37 Cal.App.3d at p. 922.)

However, only the requirement to give written notice 45 days before the filing of charges is jurisdictional. "[I]n contrast with the notice requirement, the portion of section 44938 which pertains to the opportunity to correct behavior is not jurisdictional but merely an evidentiary consideration."

(*Blake* v. *Commission on Professional Competence* (1989) 212 Cal.App.3d 513, 517 [260 Cal.Rptr. 690], fn. omitted.) Consequently, the District was not barred from proceeding against Crowl merely because its notice failed to inform him he could remedy his conduct and thus overcome the grounds for the charges against him. The question whether he had done so was an evidentiary consideration for the Commission and the trial court.

IV

*Because Crowl Corrected His Conduct After Receiving Notice, No Substantial Evidence Justified His Suspension*

At the hearing before the Commission, the following exchange took place: "MR. VANDERLAAN [counsel for Crowl]: If your Honor will permit evidence—just a preliminary ruling—we will have to offer it in due course, anyway. *There has been a total remediation. We will establish during the course of this hearing that no instance of any circumstance has occurred since the notice was given, and he has remediated.* [¶] MR. RUNDSTROM [counsel for the District]: *I will stipulate to that.*" (Italics added.)

■ Crowl contends that his remediation, stipulated to by the District, was sufficient to overcome the grounds for the charges against him. We agree. Therefore the judgment must be reversed.

A.  *Standard of review*

■ Where the trial court has reviewed the decision of the Commission by exercising its independent judgment on the evidence pursuant to section 44945, our only task is to determine whether the trial court's judgment is supported by substantial evidence. (*California Teachers Assn.* v. *Governing Board* (1983) 144 Cal.App.3d 27, 37 [192 Cal.Rptr. 358].)

B.  *Where remediation has occurred, there is no longer any ground for suspension*

■ In exercising its independent judgment on the record, the trial court evaluated the evidence from the hearing before the Commission as to the three incidents which formed the basis for the charges against Crowl. However, the trial court did not consider the stipulation of counsel that Crowl had remedied his conduct after receiving section 44938 notice, doubtless because the court believed section 44938 did not apply to suspension proceedings. By failing to consider the effect of this stipulation, the trial court erred.

As we have explained, the purpose of the section 44938 notice requirement, in suspension proceedings as in dismissal proceedings, is to give a teacher the opportunity to correct his or her conduct and thereby prevent discipline. Here, the parties agreed Crowl had corrected his conduct and there had been "a total remediation." Under section 44938, subdivision (a), no grounds for suspending Crowl remained. (See *Bassett, supra,* 201 Cal.App.3d at p. 1456.) Therefore no substantial evidence supports the trial court's findings that Crowl's prior misconduct justified his suspension even after he had overcome the grounds for such discipline by correcting his conduct.

The District offers numerous arguments to the contrary, but none withstands scrutiny.

First, the District contends that "section 44938 does not on its face require that the District provide its employees with a forgiveness period which exonerates all wrong doing [*sic*] provided there is not a relapse." We take this to mean that a teacher may not necessarily demonstrate remediation simply by managing to avoid the offensive conduct for a period of 45 days. We need not consider this argument at length because it is foreclosed by the District's stipulation that, in fact, Crowl totally remedied his conduct.

Second, the District claims a remediation period is inapplicable to charges of unprofessional conduct because unprofessional conduct is not a fault capable of correction. This assertion is contradicted by the plain language of section 44938, subdivision (a), and by relevant authority. (See, e.g., *Blake, supra,* 212 Cal.App.3d at p. 518; *Governing Board, supra,* 171 Cal.App.3d at p. 333.) *Pollak* v. *Kinder* (1978) 85 Cal.App.3d 833 [149 Cal.Rptr. 787], on which the District relies to distinguish between unprofessional conduct (alleged to be uncorrectable) and incompetency (alleged to be correctable), is inapposite because it does not involve the Education Code. Rather, the court in *Pollak* construed the term "incompetency" in Insurance Code section 1738. (*Id.* at p. 837.)

Next, the District contends a remediation period is not required in suspension proceedings because teachers subject only to suspension are entitled to less due process than those subject to dismissal. The District relies on *Civil Service Assn.* v. *City and County of San Francisco* (1978) 22 Cal.3d 552 [150 Cal.Rptr. 129, 586 P.2d 162] for the proposition that an employee subject only to suspension, unlike an employee subject to dismissal, is not entitled to the full due process protections required by *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774]. Even assuming the District reads *Civil Service Assn.* correctly, here the

remediation period available to a permanent certificated employee of a school district is determined by the provisions of the Education Code, not by court-made constitutional rules applying to public employees in general. In the statutes discussed above, the Legislature has shown it intends the same procedural protections to apply to teachers subject to dismissal or suspension.

The District contends further that even if we find a remediation period applies to suspension proceedings, the trial court did not err in holding suspension to be justified because the terms of the notice given to Crowl told him he might be dismissed rather than merely suspended. By giving him such notice, the District, in its view, retained the "flexibility" it deems necessary in discipline cases, while the fact that Crowl committed no further misconduct justified the District in seeking only to suspend him. In other words, if the concept of remediation applies here, according to the District, Crowl got the benefit of his remediation because the District did not seek to dismiss him as it was originally entitled to do.

We reject this contention because it is inconsistent with the express language of section 44938, subdivision (a), and section 44932, subdivisions (a) and (b). These provisions do not sanction the giving of notice in the alternative, as it were, nor do they provide that the punishment of dismissal may be reduced to suspension if the teacher corrects his or her conduct. The District's claim that it needs the "flexibility" to use the form of notice given here is better addressed to the Legislature.

The District contends further that even a single incident of teacher misconduct involving students would put it on notice for liability purposes and that it would be vulnerable to lawsuits if it failed to protect students against the erring teacher; therefore allowing a teacher to escape discipline would violate public policy. Like the District's "flexibility" argument, this concern should be directed to the Legislature.

Enactment and amendment of provisions of the Education Code concerning teacher discipline have historically been the product of political scrums involving sizable organizations seeking to influence the Legislature one way or the other. (See Stull, *Why Johnny Can't Read—His Own Diploma* (1979) 10 Pacific L.J. 647.) In this context, it is particularly appropriate to note that our judicial task is to decide what the Legislature has done, not what it should have done. "Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature. [Citations.]" (*Estate of Horman* (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785].)

As we have said, both the language of the Hughes-Hart Act and its legislative history indicate the Legislature's intent to make suspensions subject to the same procedures as dismissals. These procedures include the notice required by section 44938 and its requisite period of remediation. Having stipulated that Crowl had totally remedied his conduct, the District could not suspend him.

## DISPOSITION

The judgment is reversed. On remand the trial court shall vacate its order and judgment denying appellant's petition for writ of mandate and shall enter a new order and judgment granting the petition. Appellant is awarded costs on appeal.

Puglia, P. J., and Blease, J., concurred.