[No. C006672. Third Dist. Jan. 28, 1992.]

WOODLAND JOINT UNIFIED SCHOOL DISTRICT, Plaintiff and Respondent, v.
COMMISSION ON PROFESSIONAL COMPETENCE, Defendant;
EDWARD F. ZUBER, Real Party in Interest and Appellant.

1430

**COUNSEL**

Beeson, Tayer, Silbert, Bodine & Livingston and Neil Bodine for Real Party in Interest and Appellant.

Kronick, Moskovitz, Tiedemann & Girard and James E. Thompson for Plaintiff and Respondent.

## OPINION

SIMS, J.—In this case, we confront the formidable task of making sense out of the California Education Code. (Statutory references are to this code unless otherwise indicated.) Among other things, we consider when a teacher demonstrates "evident unfitness for service" within the meaning of subdivision (a)(5) of section 44932.[1]

### PROCEDURAL BACKGROUND

Appellant Edward F. Zuber, a permanent certificated employee of respondent Woodland Joint Unified School District (District), was served by the District with notice of intent to dismiss him from his position as an English teacher at Douglass Junior High School on grounds of "evident unfitness for service" and "Persistent . . . refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the State Board of Education or by the governing board of the school district." (§ 44932, subds. (a)(5), (a)(7).)

The charges against Zuber fell into the following categories: failure to follow proper procedures for disciplining students, writing sarcastic and belittling notes about students, insulting students in class, using profanity in

---

[1] Section 44932 provides in relevant part: "(a)   No permanent employee shall be dismissed except for one or more of the following causes:

"(1)   Immoral or unprofessional conduct.

"(2)   Commission, aiding, or advocating the commission of acts of criminal syndicalism, as prohibited by Chapter 188, Statutes of 1919, or in any amendment thereof.

"(3)   Dishonesty.

"(4)   Incompetency.

"(5)   Evident unfitness for service.

"(6)   Physical or mental condition unfitting him to instruct or associate with children.

"(7)   Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the State Board of Education or by the governing board of the school district employing him.

"(8)   Conviction of a felony or of any crime involving moral turpitude.

"(9)   Violation of Section 51530 of this code or conduct specified in Section 1028 of the Government Code, added by Chapter 1418 of the Statutes of 1947.

"(10)   Violation of any provision in Sections 7001 to 7007, inclusive, of this code.

"(11)   Knowing membership by the employee in the Communist Party.

"(12)   Alcoholism or other drug abuse which makes the employee unfit to instruct or associate with children."

class, behaving rudely and contemptuously toward parents, making sarcastic remarks about other teachers in the hearing of students, displaying insubordination and disrespect toward administrators, bullying and threatening other teachers, and disrupting the grading process by interfering with the grading policy of a substitute who took over one of his classes.[2]

A commission on professional competence (Commission), convened to hear the charges pursuant to section 44944, found some to be unsupported by the evidence and the rest insufficient to justify dismissal; accordingly it dismissed the District's accusation.

The District filed a petition for writ of mandate with the Yolo County Superior Court, challenging certain findings of the Commission and requesting the trial court make a further finding that the pattern and course of Zuber's conduct showed him temperamentally unfit to teach, so that his continued employment would pose a substantial danger to faculty, administrators, students, and parents. After reviewing the entire record and exercising its independent judgment on the evidence pursuant to section 44945, the trial court issued a statement of decision and judgment in favor of the District, making the following findings of fact:[3]

"FINDING No. 10:   [¶] On or about January 8, 1986, Zuber was approached in the faculty lounge by Barbara French . . . a substitute teacher, who was upset that Zuber had sent a note to Principal Parker suggesting that Ms. French detain her students after school, rather than during the first part of the student's period. French confronted Zuber and in a determined posture, suggested that he come to her directly in the future with faculty problems, rather than approach the administration. French was upset because she felt insulted by Zuber's note to Parker. In a voice loud enough for other teachers to hear, French told Zuber to the effect, 'in the future, I would appreciate it if you have a problem with my students that you approach me.' Zuber became incensed and at some point in a voice loud enough for other faculty members to hear stated, 'I don't give a shit what you think.' Later in the argument he said, 'First, you're a woman and second I don't care.' Zuber placed his face inches away from the face of French and shouted after her as she walked away, 'and you know where you can put that too!' [¶] Zuber was subsequently ordered by Principal Parker to apologize to Ms. French. He did

---

[2]In all, 29 specific acts were charged. The District asserted that all of them showed "evident unfitness for service" and that 18 of them additionally showed "persistent refusal or neglect to obey the school laws of the state and the reasonable regulations of the governing board."

[3]The trial court reaffirmed and incorporated by reference the findings of the Commission numbered 1 through 9, 11, 13 through 16, and 19, all of which exonerated Zuber. The District does not challenge those findings.

so, but only in a sarcastic tone. That [*sic*] at the end of the school year each apologized to the other at a cocktail party.

"FINDING NO. 12: Between January 6th [*sic*] and February 7, 1986, Zuber referred a total of 15 of his students to Vice-Principal Jerry Courter for discipline. On many of the referral slips which the students were required to carry to the office and present to administrators, Zuber wrote sarcastic and belittling comments about his students. On several occasions he provided no explanation as to why he wanted the student punished. The sarcastic comments to the students were on two specific occasions, at least, comical in nature but quite belittling to the students.

"FINDING NO. 17: [¶] The evidence establishes that Zuber was confrontational and contemptuous in dealing with the administration at Douglass Junior High School. That [*sic*] he challenged Vice-Prinicipal Courter on February 11 and May 14, 1986, in an aggressive and belligerent manner. Zuber wrote an angry letter to Courter on May 19, 1986, questioning Courter's competence and administrative knowledge. This was contributed to in part by memos of Courter dated February 10 and May 14, 1986 which contained mistakes and incorrect information. However, Zuber's conduct was angry and belligerent when confronting Courter in the administration building lobby in front of parents, students and staff. Soon thereafter he wrote a memorandum to Courter containing inappropriate and sarcastic references to Courter's 'obvious lack of knowledge.' [¶] The Vice-Principal's memos contained only minor errors, and were insufficient to excuse Zuber's acts of aggression and open hostility to the school administrator. This was observed by both parents and students, and it disrupted the educational process.

"FINDING NO. 18: [¶] On April 28, 1986 Zuber wrote a letter to Principal Parker in response to a parent's complaint and the subsequent handling of the complaint by the administration. In this letter Zuber referred to a proper reprimand by Principal Parker for his rude treatment of the mother of a student. Zuber's letter contained a series of personal attacks on Principal Parker and another teacher whom he castigated with foul language, approaching the profane. Undoubtedly it was an expression of Zuber's opinion in this matter. [¶] On May 13, 1986 Zuber wrote a second letter to Parker in response to Parker's evaluation of him. The tone of this letter was hostile, critical, and contemptuous. It is true that the evaluation by Parker was later determined by an arbitrator to be improper and in violation of the collective bargaining agreement. [¶] Despite the fact that Zuber prevailed in that difference of opinion with the administration the conduct and the letters by

Zuber relating to this matter are matters of great concern. In the faculty lounge, Zuber waived [*sic*] his evaluation in the air, announcing to the other teachers that he was going 'to get' Parker and that it was going to be fun to do so. In his written response to Parker's evaluation it [*sic*], among other things, referred to Parker as an individual who does not possess the necessary skills for an honest and contractually secure evaluation, nor inclined to accept responsibility of leadership in the development and maintenance of an effective plant; refers to Parker's 'limited administrative skills, obvious lack of dedication to the school site, and laissez-faire approach to policy application'; and, in reference to Parker, that 'before a man can be a good carpenter, he has to be smarter than the wood'; accused Parker of having 'unmitigated gall' for criticizing his teaching presentation, and characterized administrative support of teachers at Douglas [*sic*] to be 'a myth at best and professionally odious on most occasions.' [¶] While the letters and verbal discussions in the faculty lounge do not demonstrate insubordination they circumstantially evidence an unwillingness to accept administrative direction.

"FINDING NO. 20: [¶] The evidence establishes that research specialist teacher Jeanne Hanna and Zuber had an ongoing and intense interpersonal conflict during the period from December 1985 through November 1986. This conflict resulted in a number of confrontations and disagreements. There was a disagreement over the content of the lesson plans prepared by Zuber for Bryan G. on April 24, 1986. Zuber gave Hanna the lesson plan for the student as contemplated and Hanna expected a lesson plan with more details. [¶] There was a heated confrontation on November 26, 1986. Zuber and Hanna were both concerned about a Special Ed. student. [¶] The instructional programs for special education students are developed by special education teachers at Douglas [*sic*]. Hanna and teacher Buffington were working with special education student Debbie G. An individual education program meeting was held for Debbie G. on November 21, 1986. In preparation for the meeting, Mrs. Hanna, a resource specialist teacher, requested progress reports from each of Debbie's teachers, including Zuber. All teachers responded except Zuber. However, at the meeting Debbie told both Hanna and Buffington that she had been given a test by a counselor, Mr. Hadden. The mother of Debbie asked for the test results and Hanna and Buffington agreed to obtain the test results for her. After the meeting counselor Hadden informed Hanna that Zuber had asked him to give the test and that Zuber now had the test scores. Before this meeting neither Hanna nor Buffington had been aware that any individual testing had been done for Debbie. On November 24, 1986 Hanna wrote to Zuber a note requesting the test scores. She received no reply to her request. Hanna went to Zuber's

classroom prior to the commencement of class to obtain the results of the diagnostic reading test. Zuber told Hanna that the test results were at his home. Hanna was adamant in her request for the test results and requested further discussions outside the classroom. They continued discussing the matter just outside the classroom door. The discussion intensified and Zuber described Hanna with grossly profane words.[4] This resulted in Hanna becoming upset and feeling intimidated. Upon the ringing of the classroom bell Zuber entered his classroom breaking off the argument[;] however[,] Hanna followed him. She persisted in the presence of the students in demanding the test results. Zuber, in turn, demanded that she leave so that he could commence instruction. Finally, in the presence of students Zuber became more forceful in his demands, including 'hit the ramp, champ!' [¶] Hanna then went directly to Principal Parker's office where she broke down, crying, while trying to tell Parker what happened. [¶] In making its finding, the court notes that a determination of the credibility of the two participants in this heated argument is an issue. The court finds the above facts, but also finds that a substantial degree of provocation existed.

"FINDING NO. 21:    [¶] On December 16, 1986, Zuber began an extended leave for medical reasons. His classes were assigned to a long-term substitute teacher who was instructed by the administration to determine the grades for Zuber's former students. On January 13, 1987 Principal Parker requested in writing that Zuber provide information and assistance in obtaining semester grades for students in his classes. Such grades were scheduled to be issued by the end of the month. This letter was by registered mail but was not picked up by Zuber until January 28. Zuber testified, however, that he sent a letter to Parker with the grade records enclosed on January 16, 1987. Such a letter was never received by Parker. The memorandum indicated Zuber's decision to cut off the grading periods for all of his former classes on January 9, about three weeks before the end of the grading period. Zuber made this decision, because, in his view, the district had 'disrupted his instructional program' and that it would therefore, [sic] be 'unfair to expect the students to take their term and semester tests.' [¶] Since Principal Parker had not received the letter from Zuber the substitute teacher, Caryl Summers, proceeded to calculate the students' grades based on her own evaluation and grading materials left in the classroom by Zuber. Some students, upon learning from Mrs. Summers what their grade was going to be, called and complained to Zuber about unexpectedly lower grades. Zuber therefore decided to call all of the students or their parents and inform them of the grades he had submitted for the quarter. He instructed them to see a counselor friend, Mr. Hadden if their grades were different than those

---

[4]Zuber said, "You are a stupid bitch and a fucking slime ball."

promised by Zuber. He told them that Hadden would have the grades changed. He also told them what substitutes do and that 'substitute work' doesn't count. [¶] At the time he made his calls, Zuber had not spoken to either Summers or to Parker about the grades or about his intention to call students. At the time he made the calls, Zuber knew only what the students told him about the work they had done for Summers since January and about the grades they had achieved on their final examinations. While there may have been no district rule against this, the evidence indicates Zuber was not authorized or requested to telephone parents or students to indicate verbally what their grade would be, and such authorization would not be expected when a substitute teacher has taken over the class. [¶] When Zuber made these calls, discipline in the classes of Ms. Summers immediately deteriorated. For example, one student told Summers that since Zuber had given them their grades, her class was a 'total waste.' Discipline deteriorated to the point that Principal Parker came into the classes of Summers and told the students that Ms. Summers was authorized to assign and grade their work. [¶] As a result of all the foregoing, classroom discipline was adversely affected and Ms. Summers felt that her authority was completely undermined.

"FINDING No. 22: [¶] On February 6, 1987, Principal Parker requested that Zuber meet with the new teacher, Caryl Summers, and with Parker so that Summers could obtain the grade book of Zuber, which contained more complete information necessary to complete the grading process. A meeting to discuss the situation was scheduled for 7:30 a.m. on February 9, 1987, at the school. Parker and Summers met in the administration office at 7:30 a.m. but Zuber did not appear. In fact, Zuber went to the faculty lounge, and it was his testimony that the meeting was scheduled to take place at that location rather than the administration office. Zuber did not go to the Principal's office to ascertain the whereabouts of the Principal or Ms. Summers nor did he attempt to call the Principal, although there was a telephone in the faculty lounge. Instead, Zuber pinned to the bulletin board in the lounge his purported students' grades [sic] along with a memorandum which he had written. Zuber also tore the edges off the memorandum and wrote in the margin: 'this one should stand out in your mind & be difficult to lose. Maybe just crouch.' The court infers this related to the fact that Parker had not received the letter of grades from Zuber [see Finding 21]. [¶] At best, Zuber's conduct on this occasion was negligent in that he did not use the telephone in the faculty lounge to call Parker when it was apparent that Parker was not making the appearance in the lounge [sic] expected by Zuber. If he had called, he would have realized the meeting was scheduled in the administration office. Instead, Zuber left the grades in the lounge with a

very sarcastic note that was demeaning to Parker and visible for other faculty members to read. This action disrupted the education process (re-posting of students' grades) and evidenced Zuber's disrespect for Principal Parker. It affected his relationship with the administration at Douglas Jr. [*sic*] High School as well as his relationship with a fellow staff member[,] Caryl Summers."

The trial court measured Zuber's conduct against the criteria for unfitness for service set out by our Supreme Court in *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]. In *Morrison* the court held that under former section 13202, a predecessor provision of section 44932, *"unprofessional conduct"* meant "conduct indicat[ing] that [a teacher] is unfit to teach." (1 Cal.3d at p. 229.) The court then provided the following list of factors relevant to determining unfitness to teach: ". . . [T]he [fact finder] may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers. These factors are relevant to the extent that they assist the [fact finder] in determining whether the teacher's fitness to teach [*sic*], i.e., in determining whether the teacher's future classroom performance and overall impact on his students are likely to meet the [fact finder's] standards." (*Id.* at pp. 229-230, fns. omitted.)

The trial court found that four of the *Morrison* criteria counted against Zuber: (1) the likelihood that his conduct adversely affected both students and fellow teachers; (2) the fact that aggravating circumstances surrounding the conduct outweighed mitigating circumstances; (3) the blameworthiness of Zuber's contempt for fellow teachers and the administration, which had prevented him from working with the administration in the best interests of students and could be expected to do so in future; and (4) the "quite strong" likelihood of the recurrence of conduct similar to that charged. (1 Cal.3d at pp. 229-230.)[5]

The trial court stated that although no individual finding was sufficient in itself to authorize Zuber's dismissal, the cumulative effect of the findings

---

[5]The trial court found that the remaining *Morrison* factors—the proximity or remoteness in time of the conduct, the type of teaching certificate held, and the possibility of the disciplinary action causing an adverse impact on Zuber's or any other teacher's constitutional rights—were irrelevant or neutral.

showed a pattern and course of misconduct justifying the additional finding that Zuber's continued employment posed "substantial danger to faculty, administrators, students, and parents of the district." The trial court found Zuber's conduct was attributable to a defect in temperament when it stated, "The fault is in the contempt he felt for fellow teachers and the administration. This quite apparently prevented, and will prevent, working with a future administration in the best interests of the students." Accordingly, the trial court held that cause for dismissal under section 44932, subdivision (a)(5) (evident unfitness for service) had been established.[6]

The trial court granted the writ sought by the District, ordering the Commission to modify its findings in accordance with those of the trial court and to render judgment dismissing Zuber.

Zuber appeals from the trial court's judgment on both procedural and substantive grounds. We shall affirm the judgment.

### DISCUSSION

### I

*"Evident Unfitness for Service" Is Not Synonymous With "Unprofessional Conduct"; "Evident Unfitness" Requires a Defect of Temperament.*

Several of Zuber's contentions require us to determine the proper meaning of "evident unfitness for service," as used in section 44932. Section 44932 specifies 12 statutory grounds for dismissal of permanent certificated employees of public elementary and secondary schools. (See fn. 1, *ante.*) These include among others "Immoral or unprofessional conduct" (subd. (a)(1)) and "Evident unfitness for service" (subd. (a)(5)). (See fn. 1, *ante.*) As it turns out, the proper definition of "evident unfitness for service" is not easily determined. As curiously happens in the law from time to time, two parallel lines of cases have developed, each reaching a different definition of "evident unfitness for service" without acknowledging the contradiction in the other line of cases.

A.  *Cases equating "evident unfitness for service" with "unprofessional conduct."*

The first line of cases is traceable to *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, discussed above, where our Supreme Court concluded

---

[6]The District's petition for writ of mandate did not ask the trial court to make any findings as to section 44932, subdivision (a)(7) (persistent refusal to follow school laws and regulations), and the trial court did not do so.

"unprofessional conduct" meant conduct showing a teacher was "unfit" to teach. (P. 229.)

In *Oakland Unified Sch. Dist.* v. *Olicker* (1972) 25 Cal.App.3d 1098 [102 Cal.Rptr. 421], the court concluded the *Morrison* "unfitness-to-teach" definition and test would exclusively determine whether a teacher had shown "evident unfitness for service." Noting that "each of the causes for removal stated in the code substantially overlap one another," the court stated that "'evident unfitness for service' should not be given a definite technical meaning" or "subsumed under some set formula." (*Id.* at p. 1108.)

*Olicker*'s adoption of the *Morrison* definition and test was followed in *San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278, 284 [185 Cal.Rptr. 203] (construing current § 44932, subd. (a)(5)), *Bevli* v. *Brisco* (1985) 165 Cal.App.3d 812, 818 [212 Cal.Rptr. 36] (construing analogous provision governing community college employees), and in *Bevli* v. *Brisco* (1989) 211 Cal.App.3d 986, 992-993 [260 Cal.Rptr. 57] (same). (See also *Board of Trustees* v. *Stubblefield* (1971) 16 Cal.App.3d 820, 825 [94 Cal.Rptr. 318].)

Because the *Olicker* line of cases eschews a further definition of "evident unfitness for service," and because the latter term is defined exclusively by reference to *Morrison*'s criteria for "unprofessional conduct," the practical result of the *Olicker* line of cases is that "evident unfitness for service" means the same thing as "unprofessional conduct."

B.   *Cases distinguishing "evident unfitness for service" from "unprofessional conduct."*

The second line of cases has its origin in *Fresno City H. S. Dist.* v. *De Caristo* (1939) 33 Cal.App.2d 666 [92 P.2d 668] (hereafter *De Caristo*). There, the court had to decide whether the terms "physical or mental condition unfitting [a teacher] to instruct," "incompetency," and "evident unfitness for service" in section 5.650 of the former School Code were mutually distinguishable. Applying the rules of statutory construction that "where possible, every clause and word of a statute should be given effect and meaning" (33 Cal.App.2d at p. 672) and that "in construing the component parts of a legislative act the courts should, where possible, give force and effect to each so that the whole act may have life and vitality" (*ibid.*), the court concluded the Legislature must have intended each ground for dismissal to refer to some act or omission not necessarily included in any of the others; otherwise the statute's use of all three terms in question would be redundant. (*Id.* at p. 671.) The court suggested that "'evident unfitness for

service' could refer to temperamental defects or inadequacies," whereas " 'incompetency' could be held to refer to lack of educational qualifications, or, possessing them, lack of ability to transmit knowledge to pupils," and " 'Physical or mental condition unfitting [a teacher] to instruct' could refer to physical weakness or disease, or mental deterioration." (*Ibid.*)

*De Caristo*'s approach was followed in *Tarquin* v. *Commission on Professional Competence* (1978) 84 Cal.App.3d 251 [148 Cal.Rptr. 522]. In *Tarquin* a teacher was charged under former section 13403 with incompetency, evident unfitness for service, and persistent violation of school laws and regulations. (84 Cal.App.3d at p. 255.) Incompetency, like unprofessional conduct, required that the teacher receive prior notice of the offensive conduct under former section 13407. (84 Cal.App.3d at p. 257.) The teacher did not receive notice. The commission sustained the charges and ordered the teacher dismissed, but the trial court found that the failure of notice on the incompetency charges had tainted the entire proceedings; therefore it issued a writ of mandate directing the commission to set aside the dismissal. The reviewing court agreed that the failure of notice precluded the school district from proceeding on the charges of incompetency but held that the proceedings as a whole were not tainted because the evidence on the remaining charges was independent of the evidence on incompetency. (*Id.* at pp. 260, 262.) The court applied the rule of *De Caristo* that each cause for removal specified in the statute refers to acts or omissions not necessarily included in the others. (*Id.* at p. 260.) Citing *De Caristo*'s definition of "evident unfitness for service" as a matter of " 'temperamental defects or inadequacies' " (*ibid.*), the court remanded the cause to the trial court to reconsider whether substantial evidence supported the commission's findings on this ground. (*Id.* at p. 262.)[7]

A third case has proferred a definition of "evident unfitness for service" that helps to distinguish that term from "unprofessional conduct." In *Palo Verde etc. Sch. Dist.* v. *Hensey* (1970) 9 Cal.App.3d 967 [88 Cal.Rptr. 570], the court started with the rule requiring that the terms used in the Education Code "are to be construed according to their common and approved usage having regard for the context in which the Legislature used them." (*Hensey, supra,* at p. 971.) The court applied this rule as follows: "Insofar as the phrase 'evident unfitness' is concerned, the parties refer us to dictionary definitions in which 'evident' is defined in Webster's Collegiate Dictionary as 'Clear to the vision and understanding,' . . . , and 'unfit' as defined in

---

[7]The charges alleging evident unfitness for service in *Tarquin* consisted of acts showing a pattern of abusive or demeaning behavior toward students: insulting students, throwing an eraser at a student, inability to identify a student who had been in his class for 10 weeks, and laying hands on students. (84 Cal.App.3d at p. 261.)

the same tome . . . as 'not fit; not adapted to a purpose, unsuitable; incapable; incompetent; and physically or mentally unsound.' The parties further refer us to a definition of the word 'unfit' in California Words, Phrases and Maxims, page 440, as . . . 'unsuitable, incompetent and not adapted for a particular use or service.'" (*Id.* at p. 972.) The court then measured the evidence in the case by these definitions. (*Id.* at pp. 972-976.)

C.   *Established canons of statutory construction compel adoption of the De Caristo line of cases.*

As we shall explain, we believe the *De Caristo-Tarquin-Hensey* line of cases contains the preferred analysis.   ■   Combining the definitions offered in *Hensey* and *De Caristo* in light of the context of the statute as a whole, "evident unfitness for service" in section 44932, subdivision (a)(5), properly means "clearly not fit, not adapted to or unsuitable for teaching, ordinarily by reason of temperamental defects or inadequacies."[8] Unlike "unprofessional conduct," "evident unfitness for service" connotes a fixed character trait, presumably not remediable merely on receipt of notice that one's conduct fails to meet the expectations of the employing school district.

Our conclusion is dictated by two established canons of statutory construction.

■   The first, as *De Caristo* properly recognized, is that, "Significance should be given, if possible, to every word of an act. [Citation.] Conversely, a construction that renders a word surplusage should be avoided. [Citations.]" (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798-799 [268 Cal.Rptr. 753, 789 P.2d 934].)   ■   This canon does not allow "unprofessional conduct" and "evident unfitness for service" to mean precisely the same thing. Moreover, we must give significance to the word *"evident"* in "evident unfitness for service." A requirement of temperamental defect gives significance to this term.

Nor is this conclusion at odds with the teaching of our Supreme Court that, "Manifestly, a particular act or omission of a teacher may constitute unprofessional conduct, evident unfitness for service, and a persistent violation of or refusal to obey prescribed rules and regulations." (*Board of Education* v. *Swan* (1953) 41 Cal.2d 546, 551 [261 P.2d 261], construing

---

[8]The court in *Hensey*, as indicated above, also included in its definition the terms "incompetent" and "physically or mentally unsound." (9 Cal.App.3d at p. 972.) However, in the context of the statute as a whole these terms cannot be part of the definition of "evident unfitness for service" because they are listed as separate causes for dismissal. (§ 44932, subds. (a)(4) and (a)(6); see fn. 1, *ante.*)

former section 13521 (Stats. 1943, ch. 71, p. 568), overruled on other grounds in *Bekiaris* v. *Board of Education* (1972) 6 Cal.3d 575 [100 Cal.Rptr. 16, 493 P.2d 480].) "Unprofessional conduct" is, as it were, often a lesser included form of proscribed behavior within "evident unfitness for service." Thus, conduct constituting "evident unfitness for service" will often constitute "unprofessional conduct." But the converse is not true. "Evident unfitness for service" requires that unfitness for service be attributable to a defect in temperament—a requirement not necessary for a finding of "unprofessional conduct."

The second canon of statutory construction compelling our conclusion is: "[T]he meaning of [an] enactment may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]" (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 91[255 Cal.Rptr. 670, 767 P.2d 1148].) As we shall explain in a moment, section 44938 requires a school district to send a teacher a 45-day notice where the district seeks to dismiss the teacher on the ground of "unprofessional conduct" but not when it does so on the ground of "evident unfitness for service." The purpose of the notice requirement is to allow a teacher to correct his or her conduct and thus overcome grounds for the charge. (*Pittsburg Unified School Dist.* v. *Commission on Professional Competence* (1983) 146 Cal.App.3d 964, 975 [194 Cal.Rptr. 672]; *McKee* v. *Commission on Profession Competence* (1981) 114 Cal.App.3d 718, 721 [171 Cal.Rptr. 81].) But where a flaw of temperament is the root cause of a teacher's bad conduct, there is no reasonable likelihood the teacher can so reform his or her temperament within 45 days as to assure the employing school district the bad conduct will not recur.

D. *The Morrison criteria must still be considered.*

Our conclusion does not mean that the criteria for unfitness set out in *Morrison* v. *State Board of Education, supra,* 1 Cal.3d at pages 229-230 may be disregarded where "evident unfitness for service" is at issue. These criteria must be analyzed to determine, as a threshold matter, whether the cited conduct indicates unfitness for service. (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 696 [139 Cal.Rptr. 700, 566 P.2d 602].) If the *Morrison* criteria are satisfied, the next step is to determine whether the "unfitness" is "evident"; i.e., whether the offensive conduct is caused by a defect in temperament.

With this background, we turn to Zuber's contentions.

## II

*The District Was Not Obligated to Give Zuber Notice Pursuant to Section 44938.*

Zuber contends the District failed to give proper notice under section 44938 before filing charges against him.

Section 44938, subdivision (a), provides in relevant part: "The governing board of any school district shall not act upon any *charges of unprofessional conduct* unless at least 45 calendar days prior to the date of the filing, the board or its authorized representative has given the employee against whom the charge is filed, written notice *of the unprofessional conduct*, specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his or her faults and overcome the grounds for such charge. . . ." (Italics added.)

Where a school district seeking the dismissal of a permanent certificated employee on charges of unprofessional conduct fails to comply with the notice provision of section 44938, subdivision (a), it lacks jurisdiction to proceed, and any action subsequently taken against the employee is invalid. (*McKee* v. *Commission on Professional Competence, supra,* 114 Cal.App.3d at p. 721; *Tarquin* v. *Commission on Professional Competence, supra,* 84 Cal.App.3d at pp. 257-259 [construing former § 13407]; *Livermore Valley Joint Unified Sch. Dist.* v. *Feinberg* (1974) 37 Cal.App.3d 920, 922 [112 Cal.Rptr. 923] [same].)

It is undisputed that Zuber did not receive the 45-day notice which would have been required had he been charged with unprofessional conduct. However, section 44938 does not expressly require that notice be given where a teacher is charged with "evident unfitness for service" or "Persistent . . . refusal to obey . . . reasonable regulations prescribed . . . by the governing board of the school district . . . ." Zuber contends in effect that he should have been charged with "unprofessional conduct" because the "bulk" of the District's allegations amounted to charges of unprofessional conduct, even though they might also have made out a case for "evident unfitness for service." Zuber notes our Supreme Court has concluded the same conduct may constitute unprofessional conduct and evident unfitness for service. (*Board of Education* v. *Swan, supra,* 41 Cal.2d 546.) In Zuber's view, by avoiding the "unprofessional conduct" label for these allegations the District engaged in "charge by subterfuge" and "crafty pleading" to escape the penalty it should have incurred for failing to give due notice.

Zuber's argument is foreclosed by subdivision (c) of section 44938, which provides in relevant part: " 'Unprofessional conduct' as used in this section

means, and refers to, the *unprofessional conduct particularly specified as a cause for dismissal* or suspension in Sections 44932 and 44933 *and does not include any other cause for dismissal specified in Section 44932.*" (Italics added.)

In our view, subdivision (c) of section 44938 demonstrates the Legislature's awareness that "unprofessional conduct" could embrace the vast majority of the other causes for discipline set out in section 44932 (fn. 1, *ante*). Subdivision (c) makes clear that notice under section 44938 is required only where "unprofessional conduct" is ultimately charged.[9] (See *Bassett Unified School Dist.* v. *Commission on Professional Competence* (1988) 201 Cal.App.3d 1444, 1455 [247 Cal.Rptr. 865]; *Pittsburg Unified School Dist.* v. *Commission on Professional Competence, supra,* 146 Cal.App.3d at p. 974; *Tarquin* v. *Commission on Professional Competence, supra,* 84 Cal.App.3d at p. 260.) This court has no authority to rewrite the statute to require notice where unprofessional conduct is not charged. (See *Mills* v. *Superior Court* (1986) 42 Cal.3d 951, 957 [232 Cal.Rptr. 141, 728 P.2d 211]; *Metromedia, Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, 187 [185 Cal.Rptr. 260, 649 P.2d 902].) The short answer to Zuber's claim of inadequate notice, then, is that he was not entitled to the statutory 45-day notice because he was not charged with unprofessional conduct. Moreover, as we have explained, the Legislature could reasonably conclude notice of remediation would be inappropriate where "evident unfitness for service" is at issue because, by definition, one who is evidently unfit for service is incapable of correcting one's offensive behavior.

Zuber also cites *Livermore Valley Joint Unified Sch. Dist.* v. *Feinberg, supra,* 37 Cal.App.3d 920. There, a teacher was charged with unprofessional conduct, evident unfitness for service, and persistent violation of school laws and regulations. He received no notice of remediation under former section 13407 (the predecessor to § 44938). The Court of Appeal concluded he was entitled to notice: "It has long been recognized that a particular act or omission may constitute all three of the grounds of dismissal here charged [citations]. Here, the great bulk of the specific deficiencies *charged* and proven against appellant fall within the term 'unprofessional conduct,' even though they may also go to establish either 'evident unfitness' or, 'persistent

---

[9]The dissent argues that subdivision (c) of section 44938 does not refer to the charging document. However, subdivision (c) defines "unprofessional conduct" for the purposes of section 44938. The duty to give notice, under subdivision (a) of section 44938, is triggered by the nature of the charges brought: "The governing board of any school district shall not act upon any charges of unprofessional conduct [unless notice is given] . . . ." Read together subdivisions (a) and (c) of section 44938 suggest that the definition of "unprofessional conduct" in subdivision (c) refers to the charges of unprofessional conduct described in subdivision (a).

disregard of regulations.' It follows that we cannot attribute the judgment to grounds other than unprofessional conduct, and must reverse the judgment in its entirety." (*Feinberg, supra,* 37 Cal.App.3d at pp. 922-923, italics added.) *Feinberg* is distinguishable because there the teacher was *charged* with unprofessional conduct. Unlike the dissent, we do not read the case as mandating that notice be given where a teacher is not charged with unprofessional conduct. In any event, assuming *Feinberg* does suggest notice should be given, it does so without consideration of subdivision (c) of section 44938; consequently, we respectfully decline to follow it on this point.

The dissenting opinion argues that the duty to give notice should not depend upon the label attached to the offensive conduct. If, in fact, the offensive conduct constitutes "unprofessional conduct" then notice must be given regardless of the charges brought.

In our view, this argument proves too much. As we have said, the term "unprofessional conduct" is broad enough to embrace the vast majority of grounds of discipline specified in section 44932. (See fn. 1, *ante.*) Consequently, if the dissent's view were to prevail, notice would have to be given whenever a school district sought to discipline a teacher for refusal to obey the school laws, or for conviction of a crime involving moral turpitude, or for any of the other statutory grounds constituting de facto unprofessional conduct. We cannot reconcile this result with the teaching of subdivision (c) of section 44938, which, as we have discussed, limits the obligation to give notice to charges of unprofessional conduct.[10]

We conclude the District was not obligated to give Zuber notice under section 44938.

### III

*By Failing to Raise the Issue Below, Zuber Has Waived Any Contention That Material Kept Unlawfully in Private Files Was Used Against Him.*

■ Zuber contends he was prejudiced, and denied his due process rights, when certain material assertedly kept in unlawful private files of the principal and vice-principal was introduced in evidence before the Commission.

---

[10]The dissenting opinion also relies on *De Caristo, supra,* 33 Cal.App.2d 666 to support its view that Zuber was entitled to notice even though not charged with unprofessional conduct. However, *De Caristo* was decided under the former School Code. Insofar as the opinion discloses, that code contained no analog to subdivision (c) of section 44938, which we find dispositive here. Consequently, *De Caristo* does not change our view that Zuber was not entitled to notice.

(See § 44031; *Miller* v. *Chico Unified School Dist.* (1979) 24 Cal.3d 703 [157 Cal.Rptr. 72, 597 P.2d 475].)[11]

However, as the District notes, Zuber has waived this contention by failing to object to the material on this ground either before the Commission or in the trial court.[12] (Evid. Code, § 353, subd. (a); *People* v. *Lang* (1989) 49 Cal.3d 991, 1018 [264 Cal.Rptr. 386, 782 P.2d 627]; *People* v. *Burton* (1989) 48 Cal.3d 843, 863 [258 Cal.Rptr. 184, 771 P.2d 1270]; *People* v. *Harris* (1989) 47 Cal.3d 1047, 1089 [255 Cal.Rptr. 352, 767 P.2d 619].) Moreover, by tendering this issue for the first time to this court, Zuber is attempting impermissibly to assert a new theory of the case on appeal. "We recognize that an appellate court may allow an appellant to assert a new theory of the case on appeal where the facts were clearly put at issue at trial and are undisputed on appeal. (*Panopulos* v. *Maderis* (1956) 47 Cal.2d 337, 341 [303 P.2d 738] [].) However, 'if the new theory contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at trial the opposing party should not be required to defend against it on appeal. [Citations.]' *Ibid.*)" (*Richmond* v. *Dart Industries, Inc.* (1987) 196 Cal.App.3d 869, 879 [242 Cal.Rptr. 184].) Here, the District never had the opportunity to litigate whether derogatory information was kept in private files or whether Zuber was given a chance to review it. Zuber may not pursue this new theory on appeal. (*Ibid.*)

---

[11]Section 44031 provides: "(a) Materials in personnel files of employees that may serve as a basis for affecting the status of their employment are to be made available for the inspection of the person involved.

"(b) Except as otherwise provided in subdivision (e), this material is not to include ratings, reports, or records that (1) were obtained prior to the employment of the person involved, (2) were prepared by identifiable examination committee members, or (3) were obtained in connection with a promotional examination.

"(c) Every employee shall have the right to inspect these materials upon request, provided that the request is made at a time when the person is not actually required to render services to the employing district.

"(d) Information of a derogatory nature, except material mentioned in subdivision (b), shall not be entered or filed unless and until the employee is given notice and an opportunity to review and comment thereon. An employee shall have the right to enter, and have attached to any derogatory statement, his own comments thereon. The review shall take place during normal business hours, and the employee shall be released from duty for this purpose without salary reduction.

"(e) Notwithstanding subdivision (b), every noncredentialed employee shall have access to his or her numerical scores obtained as a result of a written examination."

[12]In his opening brief Zuber identifies 16 exhibits as improperly admitted before the Commission on this ground. Of these, nine were admitted without objection; six were objected to only on hearsay grounds; one was objected to on grounds of relevance, best evidence, and hearsay. No section 44031 objection was made to any of these exhibits.

Similarly, in his pleadings in the trial court Zuber raised no issue of the District's noncompliance with section 44031, nor did he contend that any of the above exhibits were improperly admitted on section 44031 grounds.

IV

*The District Was Not Obligated as a Matter of Law to Warn Zuber of His Bad Conduct Nor to Engage in Progressive Discipline; Moreover, Substantial Evidence Shows Zuber's Conduct Was Irremediable.*

Zuber contends his dismissal is unlawful because, he asserts, the District failed to warn him on each occasion of his bad conduct and because the District failed to discipline him progressively. His claim is premised on the following legal arguments: (a) warnings and progressive discipline are required by the Education Code; (b) warnings and progressive discipline are required by constitutional requirements of due process of law; and (c) warnings and progressive discipline are required to demonstrate substantial evidence of "evident unfitness for service." We address these arguments serially.

A. *The Education Code does not require warnings of offensive conduct.*

To the extent Zuber suggests a warning is a necessary precondition for a finding of "evident unfitness for service" under the Education Code, the suggestion is without legal authority. *Midway School Dist.* v. *Griffeath* (1946) 29 Cal.2d 13 [172 P.2d 857] and *Governing Board of the Oakdale Union School Dist.* v. *Seaman* (1972) 28 Cal.App.3d 77 [104 Cal.Rptr. 64, 527], cited by Zuber are inapposite. They hold that a teacher may not be dismissed for "Persistent violation of or refusal to obey the school laws . . . or reasonable regulations" (§ 44932, subd. (7)) where a single violation is shown. (*Griffeath, supra,* at p. 18; *Seaman, supra,* at p. 83.) Similarly *San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1985) 174 Cal.App.3d 1176 [220 Cal.Rptr. 351], also cited by Zuber, merely held that substantial evidence supported a teacher's dismissal for "persistent violation" of a district's regulations where a teacher repeatedly failed to provide lesson plans and was notified of the failures. These cases do not support Zuber's suggestion that warnings or progressive discipline are necessary preconditions to a dismissal for "evident unfitness for service."

Zuber apparently recognizes that neither section 44938 nor section 44031 expressly requires the warnings he says he should have been given. However, Zuber asserts section 44938 reflects a "policy" that teachers who act unprofessionally should be given sufficient notice of their deficiency before dismissal so they can correct their conduct. Similarly, Zuber argues that section 44031 reflects a "policy" of requiring that an employee be notified of derogatory information before it can be used against him or her. According

to Zuber, section 44031, "manifests a broader underlying policy that teachers should be given effective notice that their conduct is considered inadequate so that they can take appropriate action, whether that action be preparing their defense, discussing the problem with their supervisors and/or changing their conduct."

In our view, Zuber does not appreciate appropriate constitutional limitations on the power of this court to construe statutes. ■ We have no general power to rewrite statutes to conform to some underlying "policy." As a rule, there can be no intent in a statute not expressed in its words; the intention of the Legislature must be determined from the language of the statute. (*In-Home Supportive Services* v. *Workers' Comp. Appeals Bd.* (1984) 152 Cal.App.3d 720, 739 [199 Cal.Rptr. 697].) The only conceivable basis for reaching Zuber's proposed result would be to find that the cited statutes require warnings by necessary implication.

"[W]hatever is *necessarily* implied in a statute is as much a part of it as that which is expressed." (*Johnston* v. *Baker* (1914) 167 Cal. 260, 264 [139 P. 86], italics added.) "But an intention to legislate by implication is not to be presumed. [Citation.]" (*First M. E. Church* v. *Los Angeles Co.* (1928) 204 Cal. 201, 204 [267 P. 703].) "Although in years past it may have been necessary for courts to read into a statute provisions not specifically expressed by the Legislature, the modern rule of construction disfavors such practice. [Citation.]" (*San Diego Service Authority for Freeway Emergencies* v. *Superior Court* (1988) 198 Cal.App.3d 1466, 1472 [244 Cal.Rptr. 440].)

"The usual standard used to interpret a statute by implication or inference is used to determine if the statute embraces such consequential applications and effects as are necessary, essential, natural or proper. Although these are not terms having precise meaning capable of measured application, it seems fair that *in order for a consequence to be implied from a statute there must be greater justification for its inclusion than a consistency or compatibility with the act from which it is implied. 'A necessary implication within the meaning of the law is one that is so strong in its probability that the contrary thereof cannot reasonably be supposed.'* And it has been more fully explained that: '[s]uch implication, inference, or presumption, as the fact may be, is always indulged to supply a deficiency, and is never permitted to contradict the act, grant, or instrument whatsoever involved.' " (2B Sutherland, Statutory Construction (5th ed. 1992) § 55.03, pp. 279-280, italics added, citations and fns. omitted.)

■ We do not perceive how section 44938 necessarily implies a warning must be given before offensive conduct may be used by a district to show

"evident unfitness for service." Indeed, we think such construction would contradict the legislative intent of section 44938. The notice prescribed by section 44938 is itself a warning. The notice tells a teacher he or she will be disciplined unless the offensive conduct is corrected. As we have recounted, the Legislature has seen fit not to require this notice/warning when charges of "evident unfitness for service" are at issue. We do not think that requiring a warning by implication can be squared with the Legislature's express exclusion of a notice/warning for "evident unfitness for service" in section 44938.

Nor is a warning of offensive conduct necessarily implied in section 44031. The Legislature has expressly restricted the scope of that statute to require disclosure of derogatory *written* materials. "[P]ursuant to [section 44031] a school administrator must be permitted to review and comment on derogatory *written material* compiled and maintained by a school district even though the material has not been properly placed in his personnel file. A school board cannot avoid the requirements of section 44031 by putting derogatory *written material* in another file not designated 'personal file' and by such a process of labelling prevent the administrator from reviewing and commenting upon allegations directed against him." (*Miller* v. *Chico Unified School Dist., supra*, 24 Cal.3d at p. 707, italics added.) We do not see how warnings of offensive conduct, not reported in writings, is necessary to disclosure of written materials. To the contrary, such an implication would amount to a fundamental rewriting and expansion of the statute.

We have noted the general reluctance of the courts to find statutory requirements by implication. (*San Diego Service Authority for Freeway Emergencies* v. *Superior Court, supra*, 198 Cal.App.3d at p. 1472.) Our reluctance here is heightened because we are construing statutes that are the eventual product of strong competing political currents. We had occasion recently to note, "Enactment and amendment of provisions of the Education Code concerning teacher discipline have historically been the product of political scrums involving sizable organizations seeking to influence the Legislature one way or the other. [Citation.] ██ In this context, it is particularly appropriate to note that our judicial task is to decide what the Legislature has done, not what it should have done. 'Courts do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature. [Citations]' [Citation.]" (*Crowl* v. *Commission on Professional Competence* (1990) 225 Cal.App.3d 334, 351 [275 Cal.Rptr. 86, 90].)

██ Unless the offensive conduct of a teacher is reduced to writing, the Education Code does not currently require that a teacher be warned of the

offensive conduct before it can be used to demonstrate "unfitness for service." If warnings are to be required as a matter of law, it is for the Legislature, not this court, to say so.

B. *Neither warnings nor progressive discipline is required by due process.*

█ Zuber contends his constitutional rights to due process of law were violated because the District did not warn or progressively discipline him for his offensive conduct.

Zuber grounds his due process claim in *Morrison*'s recognition that, "Civil as well as criminal statutes must be sufficiently clear as to give a fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies. [Citations.] The knowledge that he has erred is of little value to the teacher when gained only upon the imposition of a disciplinary penalty that jeopardizes or eliminates his livelihood. [Citation.]" (*Morrison, supra,* 1 Cal.3d at p. 231, fn. omitted.)

However, *Morrison* concluded that its promulgation of criteria for unfitness to teach "gives [former] section 13202 the required specificity." (1 Cal.3d at p. 233.) Those criteria (which do not contain a requirement of warnings or of progressive discipline) were properly applied by the trial court here to measure Zuber's conduct.

The essence of Zuber's claim is that he could not tell his conduct was wrongful. However, as we shall discuss below, Zuber could reasonably know his cited conduct was wrongful. "Teachers, particularly in the light of their professional expertise, will normally be able to determine what kind of conduct indicates unfitness to teach." (*Morrison, supra,* 1 Cal.3d at p. 233, fn. omitted.) Zuber's due process claim is not meritorious.

C. *Substantial evidence supports the trial court's conclusion that Zuber's conduct was irremediable.*

█ Zuber argues that, because he was allegedly not warned, reprimanded, or progressively disciplined he could not know his conduct was wrongful and in need of correction, so that there is no substantial evidence to support the trial court's finding, under *Morrison*, that his conduct was likely to recur. Moreover, he says on those occasions when he was warned, he corrected his conduct.

█ Where the trial court has reviewed the decision of the Commission by exercising its independent judgment on the evidence pursuant to section

44945, our only task is to determine whether the trial court's judgment is supported by substantial evidence. (*California Teachers Assn. v. Governing Board* (1983) 144 Cal.App.3d 27, 37 [192 Cal.Rptr. 358].) Zuber does not seriously challenge the evidence underlying the trial court's findings.[13] ▇ As we shall explain, the court's findings contain substantial evidence that Zuber knew or reasonably should have known his conduct was wrongful, and that his failure to correct his conduct was traceable to a temperamental defect.

1. *"Finding No. 10"—the confrontation with Barbara French.*

Zuber states that after this confrontation "neither the Principal nor the Vice-Principal either warned, reprimanded nor [*sic*] disciplined [Zuber] regarding his conduct." The trial court found that the principal ordered Zuber to apologize to Mrs. French. This order was a warning.

2. *"Finding No. 12"—the "sarcastic and belittling" comments on discipline slips.*

Zuber states that these comments ceased after February 10, 1986, when the vice-principal sent him a memo criticizing them, and that the vice-principal "never even spoke to Appellant regarding the tone of his referral memos much less reprimanded him." To say the least, these points are inconsistent. To the extent the second point is meant to show that Zuber was not warned about his misconduct, this is mere quibbling. And while it is true that he stopped writing objectionable comments on discipline slips after receiving the vice-principal's memo, this change of conduct was not a true reform. As the trial court's next finding shows, Zuber simply trained his sights on a new target: the vice-principal.

3. *"Finding No. 17"—the oral and written confrontations with Vice-Principal Courter.*

Zuber asserts: "After Appellant's confrontations with the Vice-Principal in February and May, 1986, and his letter to the Vice-Principal, neither the Principal nor the Vice-Principal either warned, reprimanded nor [*sic*] disciplined him regarding his conduct." It is significant that Zuber omits the exact dates of these "confrontations." The first occurred on February 11, the day after Zuber received the vice-principal's memo criticizing his comments on discipline slips. The second occurred on May 14, in response to a second

---

[13]To the extent Zuber's brief makes passing allusions to a lack of such evidence, we reject the suggestions.

memo from the vice-principal received by Zuber on the same day. This sequence supports the trial court's finding of a cumulative pattern of misconduct.

Moreover, Zuber's complaint that he was not warned, reprimanded, or disciplined for his acts of "angry," "belligerent" confrontation, carried on in the administration building lobby in full view of parents, students, and staff, or for his subsequent "angry letter . . . questioning Courter's competence and administrative knowledge," rests on an unsupportable premise: that if not warned, reprimanded, or disciplined for such conduct he had no way of knowing it was wrong. We cannot imagine how a teacher of Zuber's experience could have failed to realize the wrongfulness of his acts.[14]

### 4. *"Finding No. 18"—the letters to Principal Parker.*

Zuber complains that after the principal received these letters he did not issue any warning, reprimand, or discipline, nor did he tell Zuber that his job was in jeopardy if he did not change his behavior. This complaint, like the previous one, misses the mark. It is inconceivable that Zuber needed an official rap on the knuckles to alert him to the disrespect shown by sending these letters or the inappropriateness of their insulting language. On the contrary, the trial court's undisputed finding that before sending the second letter Zuber told fellow teachers he was going "to get" the principal and it would be fun to do so proves that he set out on this occasion to flaunt his contempt for the principal. Likewise, a professional educator should not need to be told that it is improper to launch personal attacks on a fellow teacher using "foul language, approaching the profane," as Zuber did in the first letter to the principal in which he described the teacher as an "egg-sucking dirty dog" who was in need of a "gut check."

### 5. *"Finding No. 20"—the confrontation with Jeanne Hanna.*

Zuber complains he was not warned, reprimanded, or disciplined concerning his conduct on this occasion. Again, we are puzzled by his apparent contention that he could not have known his acts were wrongful in the absence of a warning or a reprimand. His awareness of the true character of his conduct toward Hanna can be detected from his attempt, in testifying about this incident below, to paint that conduct in a better light than the trial court found justified by the evidence as a whole. Before the Commission Zuber denied losing his temper with Hanna or saying to her "You are a

---

[14]Zuber was employed as a teacher by the District in 1969. He taught until 1981 at Douglass Junior High School, then returned in 1985 after a four-year medical leave.

stupid bitch and a fucking slime ball," as she testified he had done. The trial court found his testimony on these points not credible, and Zuber does not challenge that finding.

6.   *"Finding No. 21"—the telephone calls to students and parents concerning the substitute teacher's grades.*

Zuber's complaint that the principal never discussed these calls with him, or otherwise warned, reprimanded, or disciplined him about them, is disingenuous given that he avoided meeting with the principal to discuss the grading problem (see "Finding No. 22," quoted *supra*). Moreover, he does not contest the trial court's findings that he made these calls without authorization or any other reason to believe they were appropriate, and that he told students and parents " 'substitute work' doesn't count." It is impossible to believe he did not realize his conduct would sabotage the substitute teacher's efforts or that he did not intend this result.

7.   *"Finding No. 22"—the missed meeting and the posted memo to the principal.*

Since Zuber's acts on this occasion were the proverbial "final straw" leading to the District's dismissal action, his complaint that he received no lesser discipline is beside the point. Moreover, he does not contest any of the trial court's findings about this incident, which amply show his intent to display once again his disrespect for the principal and to hold him up to ridicule, as well as to refuse to cooperate with the principal and the substitute teacher in solving the grading problem in his classes.

Substantial evidence supports the trial court's finding that Zuber's unacceptable conduct was likely to recur and was ultimately traceable to a defect in temperament, i.e., the contempt he felt for fellow teachers and the administration. Moreover, contrary to Zuber's claim, the evidence, taken in the aggregate, shows that Zuber's retention would pose a significant danger of psychological harm to students and fellow teachers. (See *Morrison, supra,* 1 Cal.3d at p. 235.)

V

*It Was Not Error to Apply the Morrison Factors to the Charges in the Aggregate.*

Zuber contends the trial court could not properly apply the *Morrison* factors to all the charges in the aggregate. However, the contention is

unsupported by authority. Neither *Morrison* nor *Palo Verde etc. School Dist.* v. *Hensey, supra,* 9 Cal.App.3d 967, the only other authority cited by Zuber on this point, holds any such thing. In *Hensey,* as Zuber concedes, the reviewing court expressly held that all of the charges, *taken in the aggregate,* supported the trial court's finding of evident unfitness for service. (9 Cal.App.3d at p. 976.) However, Zuber contends that because the reviewing court discussed the charges one by one and pointed out that each one showed evident unfitness for service, the trial court here should have done the same. *Hensey* does not hold that a trial court must follow any such rigid procedure, or that a finding of evident unfitness for service based on a series of charges is unjustified unless every charge in the series would independently justify dismissal.

Moreover, Zuber's contention defies common sense. When a camel's back is broken we need not weigh each straw in its load to see which one could have done the deed. We conclude that in determining whether Zuber's conduct made him unfit to teach under *Morrison,* the trial court properly considered the totality of his offensive conduct.

DISPOSITION

The judgment is affirmed.

Davis, J., concurred.

**BLEASE, Acting P. J.**—I dissent.

At issue is whether to reinstate Edward F. Zuber, a dedicated but crusty teacher, or to uphold his dismissal by a school administration that failed to warn him, as required by Education Code section 44938, that it found his acid speech intolerable. The majority upholds the administration asserting it is compelled to do so. This is based upon a wooden reading of the statute, taken out of the context of the Education Code and predicated upon a misreading of the case law. While I cannot condone Zuber's intemperate conduct, under the present law he is entitled to reinstatement, since the Legislature has chosen that as the lesser of two evils.

Zuber is a teacher whose competence is unquestioned. The trial court explicitly found his "desire . . . to properly educate his students is uncontradicted." He taught in the Woodland School District from 1969 to 1981 without incident. He was on disability leave from 1981 until December 2, 1985, when he returned to find a new school administration. He again went on extended medical leave on December 16, 1986. Four months after going

on leave, on April 30, 1987, Zuber was sent an accusation by the Woodland School Board notifying him of an intention to dismiss him, listing twenty-nine factual charges ranging over the entire period of his return, from December 4, 1985, (and beyond) to February 1987. The accusation alleged that such charges violated Education Code section 44932, subdivision (a)(5), evident unfitness for service, and section 44932, subdivision (a)(7), persistent refusal to obey school rules.

A hearing was held before a three-member commission on professional competence (Commission). The Commission unanimously found many of the charges not to be true, and, as to others, found that Zuber was not informed of a change in school rules he violated and that he modified his conduct after being so notified. The remaining charges were found not to constitute evident unfitness for service.

The trial court disagreed with the latter conclusion, relying upon the remaining charges as evidence supporting the finding that Zuber was evidently unfit for service. It reversed the decision of the Commission.

## I

The ground of discharge—evident unfitness for service—is based upon numerous acts of intemperate (and therefore unprofessional) conduct occurring over a period of one year. The school district took no action on any of these acts, suffering them to occur, without notice to Zuber that it considered them grounds of discipline, until a decision was made to cumulate them as evidence of "evident unfitness for service." The majority opinion reasons that the notice and period for remediation, required by Education Code section 44938 before disciplinary action may be imposed for unprofessional conduct, need not be given if unprofessional conduct is *not* specified as a cause of discipline in the formal charging document, the accusation. It concludes that the acts constitute evident unfitness for service, viewing them as evidence of an irremediable character trait predisposing unprofessional conduct.

The majority opinion thus permits the district to avoid the strictures of section 44938 by characterizing individual acts of unprofessional conduct, not otherwise made a cause of discipline, as evidence of evident unfitness for service, thereby transmuting one cause of discipline into another. The semantic ploy is not new in the history of teacher discharge. Until this case it has consistently been rejected because of its obvious conflict with the policy of section 44938.

## II

The Education Code establishes a detailed procedure for the discipline of teachers. Section 44932 lists the causes of discipline, among them "(1)

[U]nprofessional conduct" and "(5) Evident unfitness for service." As pertinent here a disciplinary proceeding is initiated by vote of the governing board "upon a written statement of charges formulated by [it], charging that there exists cause, as specified in Section 44932 or 44933, for the dismissal or suspension of a permanent employee of the district . . . ." (Ed. Code, § 44934.) The employee must be given notice in writing by accusation containing the information required by Government Code section 11503. (Ed. Code, § 44936.) The accusation must contain "a written statement of charges which . . . set forth in ordinary and concise language the acts or omissions with which the respondent is charged" and must "specify the statutes and rules which the respondent is alleged to have violated . . . ." (Gov. Code, § 11503.)

Unprofessional conduct is given special consideration. Section 44938 provides that a school board "shall not act upon *any charges* of unprofessional conduct unless [it] has given the employee . . . written notice of the unprofessional conduct specifying the nature thereof with such specific instances of behavior and with such particularity as to furnish the employee an opportunity to correct his or her faults and overcome the grounds for such charge." (Italics added.) The notice perforce must precede action upon the charges. "Unprofessional conduct" is defined as "the unprofessional conduct particularly specified as a cause for dismissal or suspension in Sections 44932 and 44933 and does not include any other cause for dismissal specified in Section 44932." (Ed. Code, § 44938.)[1] As will be seen, the majority opinion seizes upon this definition to support its view that the provisions of section 44938 need not be met if the *accusation* omits to state unprofessional conduct as a *cause* of discipline.

"The purpose [of Education Code section 44938] is to enable a permanent teacher to remedy correctable faults or defects that might be corrected in [the time allotted] and thus prevent discharge. This is in harmony with the entire purpose of the Teachers' Tenure Act which is to insure an efficient permanent staff of teachers for our schools whose members are not dependent upon caprice for their positions as long as they conduct themselves properly and perform their duties efficiently and well." (*Fresno City High School Dist.* v. *De Caristo* (1939) 33 Cal.App.2d 666, 674 [92 P.2d 668]; see also *Crowl* v. *Commission on Professional Competence* (1990) 225 Cal.App.3d 334 [275 Cal.Rptr. 86].) The problem arises when conduct which is unprofessional conduct is "only" alleged to constitute evident unfitness for service.

---

[1]Education Code section 44933 provides in pertinent part, "A permanent employee may be dismissed . . . on grounds of unprofessional conduct consisting of acts or omissions other than those specified in Section 44932, but any such charge shall specify instances of behavior deemed to constitute unprofessional conduct."

## III

The question is how to apply Education Code section 44938 when *acts* of unprofessional conduct are *charged* but the school board omits to allege they constitute the *cause* of "unprofessional conduct" and contends that they collectively constitute the *cause* of "evident unfitness for service."

Section 44938 is ambiguous on this point. It says that a school board may not act upon "charges of unprofessional conduct" without the required notice and opportunity for remediation. As noted, "unprofessional conduct" is defined as "the unprofessional conduct particularly specified as a cause for dismissal or suspension in Sections 44932 and 44933 and does not include any other cause for dismissal specified in Section 44932." Contrary to the assumption indulged by the majority opinion, this does *not* refer to the charging document, the accusation, but to the sections which list the *causes* for discipline. So it need not be concluded that the requirements of section 44938 may be avoided simply because the charging document, the accusation, omits to label the cause of discipline as unprofessional conduct. Later I explain the purpose of the defining clause. It suffices at this juncture to say that the purpose of section 44938 is to require notice and an opportunity for remediation *prior* to the decision to take disciplinary action. The section refers to action that must be taken before the filing of the accusation, the document which initiates a formal proceeding. On this reading, the definition of "unprofessional conduct" says nothing about the accusation.

This reading is also impelled by the fact that section 44938 was amended in 1983 to drop the qualifier "only" as modifying the reference to sections 44938 and 44933. In that form it read: " 'Unprofessional conduct' . . . as used in this section means, and refers *only* to, the unprofessional conduct . . . particularly specified as a cause for dismissal in Sections 44932 and 44933 and does not include any other cause for dismissal specified in Section 44932." (Italics added.) It is difficult to attribute this alteration to mere grammatical housekeeping since the "only" was retained in the branch of the statute addressing notice for incompetence.

It is often said that we are to read significance into changes in the statutory language. (See, e.g., *People* v. *Cicero* (1984) 157 Cal.App.3d 465, 476-477 [204 Cal.Rptr. 582].) I do not rest the resolution of the ambiguity in section 44938 upon the mechanical application of a single canon of construction. Rather, this amendment tends to affirm the meaning attributed by case law to the notice statute rather than alter that meaning. The majority opinion overlooks the ambiguity of section 44938 and hence never reaches the question of *its* resolution.

## IV

Zuber claims that the individual acts alleged and made the basis of discipline on the ground of "evident unfitness to teach" are in fact "charges of unprofessional conduct" and that he was not given the notice and opportunity for remediation required by Education Code section 44938. The majority opinion concedes that each of the acts could so be categorized but insists that they may nonetheless be made the basis for dismissal because together they permit an inference of an irremediable defect in temperament which constitutes *evident* unfitness for service.

This reasoning ignores the question presented by Zuber, whether charges of unprofessional conduct can be acted upon without compliance with section 44938 by the post hoc device of limiting the ground of discipline in the formal charging document, the accusation, to the cause of unfitness for service and omitting to state unprofessional conduct as a cause of discipline.

The problem should not be resolved by the label which the school district affixes to its charging allegations. That would permit the district to avoid the notice provisions of section 44938 by the simple use of the pen. That notion was thoroughly scotched in *Livermore Valley Joint Unified Sch. Dist.* v. *Feinberg* (1974) 37 Cal.App.3d 920 [112 Cal.Rptr. 923].

*Feinberg* held that "the notice described in section 13407 [the predecessor to Education Code section 44938] is required for a charge of unprofessional conduct, whether it be labeled as one under section 13403, subdivision (a) [now Education Code section 44932, subdivision (a)] or section 13403.5 [now section 44933]." (*Feinberg, supra,* 37 Cal.App.3d at p. 922.) The teacher in *Feinberg,* it should be noted, was dismissed "upon grounds of unprofessional conduct, evident unfitness for service, and persistent violation of school laws and regulations." (*Id.* at p. 921.) As the reference for "unprofessional conduct" the accusation referred to section 13403.5 (now § 44933) and not to section 13403 (now § 44932). At that time the predecessor to section 44938 (§ 13407) did not refer to section 13403.5, hence it was argued that its notice requirements did not apply. The court replied that "[t]o give literal effect to the final sentence of section 13407 would be to distinguish between two identical grounds for dismissal. It would permit astute counsel to avoid the notice requirement by labelling a single ground for dismissal under one section rather than its identical twin." (37 Cal.App.3d at p. 922.) The *Feinberg* opinion refused to sanction such a circumvention of the law. The court did not end there. It also said: "Here, the great bulk of the specific deficiencies charged and proven against appellant fall within the term 'unprofessional conduct,' even though they may also go

to establish either 'evident unfitness' or 'persistent disregard of regulations.' It follows that we cannot attribute the judgment to grounds other than unprofessional conduct, and must reverse the judgment in its entirety . . . ." (*Id.* at pp. 922-923.)

The majority opinion rejects Zuber's reliance upon *Feinberg*, with the assertion that it "is distinguishable because there the teacher was *charged* with 'unprofessional conduct.'" If that is intended to endorse the labeling device as a means of avoiding the strictures of section 44938 it is not only bad policy but affords no principled basis of distinction.

The majority opinion misses the point. The teacher in *Feinberg* was charged with a violation of unprofessional conduct in (now) section 44932, subdivision (a). However, he was also charged with "acts or omissions *other than* those specified in Section 44932 . . . ." (Ed. Code, § 44933, italics added.) As I will show, the charged acts of unprofessional conduct underlying the *other* asserted grounds of evident unfitness for service and persistent violation of school rules also were viewed in *Feinberg* as requiring notice under (now) section 44938.

V

The majority opinion hews to the view in *Fresno City High School Dist.* v. *De Caristo, supra,* 33 Cal.App.2d 666 that each separate ground of removal "refers to some act or omission not necessarily included in any of the others." (*Id.* at p. 671.) This is unobjectionable as far as it goes. However, the fact that different meanings are assigned to the subdivisions does not mean that they can never overlap the same *acts or omissions* and *De Caristo* does not stand for that proposition.

Acts that are unprofessional conduct may at the same time be evidence of evident unfitness, i.e. a fixed character trait or temperamental defect which renders the teacher incapable of avoiding acts that are unprofessional. (See, e.g., *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 233 [82 Cal.Rptr. 175, 461 P.2d 375] ["the prohibitions against immoral and unprofessional conduct and conduct involving moral turpitude by a teacher constitutes a general ban on conduct which would indicate his unfitness to teach"]; *Tarquin* v. *Commission on Professional Competence* (1978) 84 Cal.App.3d 251, 260 [148 Cal.Rptr. 522] ["It is true that a particular act or omission on the part of a teacher may constitute more than one of the causes for his removal specified in Education Code section 13403"]; *Perez* v. *Commission on Professional Competence* (1983) 149 Cal.App.3d 1167, 1174 [197 Cal.Rptr. 390] ["Unprofessional conduct," as used in section 44932,

subdivision (a), has been viewed broadly as "conduct such as to indicate unfitness to teach"].) Indeed, that is precisely the view of the majority opinion.

The question is what to do with acts that come within *both* the causes of unprofessional conduct and evident unfitness in this manner. *De Caristo* provides an answer to that question as well, one not recognized by the majority opinion. The teacher in *De Caristo* was given a notice of intention to dismiss which alleged several charging allegations arising under different subdivisions of the dismissal statute analogous to section 44932, including the following.

" '4. That you have committed acts of unprofessional conduct, in that you have in the presence and hearing of pupils in the school started disputes with other teachers and severely criticized them.

" '5. That for the causes above stated, you are evidently unfit for service, and for the further reason that you do not properly conduct yourself in the presence and hearing of pupils in and out of your classrooms, and in this connection you fly into fits of temper and rage and make unwarranted statements of abuse of pupils and teachers; that you, without cause or justification, accused the Superintendent, Principal and teachers of attempting to and persecuting you, and have made statements to such effect publicly to others.' " (*De Caristo, supra,* 33 Cal.App.2d at p. 669.)

At the time the predecessor to section 44938 (former School Code § 5.652 (Stats. 1935, ch. 691, § 3, p. 1886)) provided that governing boards of school districts could not "act upon any charges of incompetency other than incompetency due to physical or mental disability" unless there had been prior written notice with sufficient particularity " 'as to furnish the employee an opportunity to correct his faults and overcome his incompetency.' " (*De Caristo, supra,* 33 Cal.App.2d at p. 673.) It did not include, as section 44938 now does, "unprofessional conduct." Nonetheless the *De Caristo* opinion concluded that this prior notice provision applied to the allegation that the teacher had committed acts of unprofessional conduct and was evidently unfit for service.

"The purpose [of the notice statute, then former School Code § 5.652] is to enable a permanent teacher to remedy correctable faults or defects that might be corrected in [the time allotted] and thus prevent discharge. This is in harmony with the entire purpose of the Teachers' Tenure Act which is to insure an efficient permanent staff of teachers for our schools whose members are not dependent upon caprice for their positions as long as they conduct themselves properly and perform their duties efficiently and well.

" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The [faults related in the charging allegations quoted above] relate to very serious delinquencies on the part of the teacher. They indicate a quick temper and an uncontrolled tongue. While such faults are not to be excused, often they can be corrected. Many persons have learned to curb their tempers and to control their tongues when confronted with the necessity of so doing." (*De Caristo, supra,* 33 Cal.App.2d at pp. 674-675.)

What is first to be observed is that the notice requirement was found applicable to charged *causes* of unprofessional conduct and evident unfitness for service notwithstanding that the notice statute did not refer to them at all. If the majority opinion is right, this case turns on the simple proposition fact that unprofessional conduct was not alleged as a cause in addition to that of evident unfitness for service. But that makes no sense of *De Caristo.* If collective acts of unprofessional conduct can constitute evident unfitness for service without notice then the result in *De Caristo* should have been to predicate discipline solely upon that ground of accusation, the charge of unprofessional conduct failing for lack of notice. Instead, *De Caristo* reversed the disciplinary action.

*De Caristo* obviously does not stand for that proposition that this case can be resolved on the label affixed to the ground of discipline alleged in the accusation. I find *De Caristo*'s view more pragmatic and more equitable than the circular view of the majority opinion that the notice provision serves no purpose as to a charge of "evident unfitness" because "where a flaw of temperament is the root cause of a teacher's bad conduct, there is no reasonable likelihood the teacher can so reform his or her temperament within 45 days as to assure the employing school district the bad conduct will not recur." (See maj. opn., *ante,* at p. 1445.) There may be cases where the facts afford an inference of an irremediable defect in temperament. But with *De Caristo* I would say that where the school administration never draws a disciplinary line as to rudeness, the argument that notice would have served no purpose will not lie in its mouth.

The majority opinion rejects the argument that the duty to give notice should not depend upon the label attached to the offensive conduct in the charging document. It says that the argument proves too much, that "if the dissent's view were to prevail, notice would have to be given whenever a school district sought to discipline a teacher for refusal to obey the school laws, or for conviction of a crime involving moral turpitude, or for any of the other statutory grounds constituting de facto unprofessional conduct." (Maj.

opn., *ante*, at p. 1448.) The majority exaggerates the consequences of my argument.

The point of the rule requiring notice of unprofessional conduct is to give the teacher an opportunity to avoid conduct which amounts to a cause for dismissal. If the teacher has already engaged in sufficiently egregious conduct to meet incontestably some statutory criterion for dismissal the rule is not applicable to bar dismissal. "When the reason of a rule ceases, so should the rule itself." (Civ. Code, § 3510.) Accordingly, the rule has no application to bar dismissal, for example, on the ground that the teacher has been convicted of a felony. The fact that the felony might also be viewed as unprofessional conduct is unavailing because a statutory criterion for dismissal has already been met.

However, certain statutory criteria may only be met by multiple instances of misconduct (unprofessional conduct, *persistent* violation of school laws) and others such as evident unfitness for service at least ordinarily will require such multiple acts or omissions. The notice argument does not "prove too much," for it is only applicable to these latter circumstances. It is notable, as the trial court found, that there is no tenable claim that any one of Zuber's acts of unprofessional conduct taken in isolation would afford an inference of evident unfitness for service.

In this circumstance the result is to permit the avoidance of section 44938 by the cumulation of individual acts, each of which is concededly within the strictures of that section and each of which has been suffered in silence, leading the teacher to believe they have been tolerated. This transgresses the policy of section 44938.

The majority suggests that Zuber's behavior indicates "a fixed character trait, *presumably* not remediable merely on receipt of notice that one's conduct fails to meet the expectations of the employing school district." (Maj. opn., *ante*, at p. 1444, italics added.) The presumption that ought to be indulged in light of Education Code section 44938 and section 44031, which prohibits maintaining files of derogatory information that may serve as the basis for affecting employment status without notice and an opportunity for comment, runs in precisely the opposite direction.[2] Whether a teacher could have changed his manner if properly warned entails needless speculation.

---

[2]The majority opinion concludes that Zuber waived his contention that material from such files should not have been admitted in evidence against him by failing to object to admission based upon Education Code section 44031. I assume for the sake of discussion that is correct, despite the fact that section 44031 is not addressed to the topic of admissibility as evidence. Nonetheless, the lack of an evidentiary objection does not preclude Zuber from raising section

The policy of section 44938 is that the proof of irremediability should be found in the pudding of postwarning behavior. I note that on occasions when Zuber was warned his behavior did not measure up he corrected it, as the Commission found.

The majority opinion misses the point of notice in deriding Zuber's claim that he needed to be warned that his behavior was unprofessional on the ground that he must have known his conduct was wrongful. The purpose of the notice requirement is not to inform about abstract mores, telling an uncouth teacher what is nice behavior and what is naughty behavior. It is performative—a warning—shape up or we will ship you out. Failing to give notice within the requisite time or to make a lawful record in the personnel file in keeping with section 44031 lulls the teacher into the belief that his value to the school renders his asperity, surliness, and profanity tolerable. (Cf., *Brown v. State Personnel Bd.* (1985) 166 Cal.App.3d 1151 [213 Cal.Rptr. 53].)

There is a place for righteous anger in the education system, albeit when displayed in an unprofessional manner, as here, it can lawfully be suppressed by disciplinary means. However, it is not an unduly burdensome requirement to ask the school administration to warn a teacher who crosses its line of unacceptable behavior before acting to dismiss him.

The core of *De Caristo*'s reasoning on this point has been applied under language parallel to the present formulation of the notice statute in *Feinberg, supra.* In that case the school district "sought and was granted judicial authorization to discharge appellant upon grounds of unprofessional conduct, evident unfitness for service, and persistent violation of school laws and regulations." (37 Cal.App.3d at p. 921.) The notice statute then provided, " 'Unprofessional conduct' and 'incompetency' as used in this section means, and refers only to, the unprofessional conduct and incompetency particularly specified as a cause for dismissal in Section 13403 [the dismissal section; now Education Code section 44932] and does not include any other cause for dismissal specified in that section." (Ed. Code, former § 13407, Stats. 1965, ch. 2001, § 3, p. 4530.) The school district sought to evade the notice requirement by making no mention of Education Code, former section 13403, pleading rather that the conduct was unprofessional under former section 13403.5. "A permanent employee may be dismissed on grounds of unprofessional conduct consisting of acts or omissions other than those

44031 for the purpose of amplifying the legislative warning policy evident in section 44938. Section 44031 manifests a policy that teachers should be given contemporaneous notice of matters which school administrators deem to be derogatory and which may affect their employment status.

specified in Section 13403, but any such charge shall specify instances of behavior deemed to constitute unprofessional conduct." (Ed. Code, former § 13403.5, Stats. 1965, ch. 2001, § 1, p. 4529; compare Ed. Code, § 44933, fn. 1, *ante*.) The *Feinberg* court could not fathom the meaning of this provision but rejected this device as a means for "permit[ting] astute counsel to avoid the notice requirement," recognizing that the statutes presented "by no means the least of the contradictions and confusions of the Education Code." (37 Cal.App.3d at p. 922.) It then applied the reasoning of *De Caristo*.

"Here, the great bulk of the specific deficiencies charged and proven against appellant fall within the term 'unprofessional conduct,' even though they may also go to establish either 'evident unfitness' or 'persistent disregard of regulations.' It follows that we cannot attribute the judgment to grounds other than unprofessional conduct, and must reverse the judgment in its entirety (see [*De Caristo*], decided under a predecessor statute)." (*Feinberg*, 37 Cal.App.3d at pp. 922-923.)

As related, the majority opinion cursorily dismisses Zuber's reliance upon *Feinberg* with the assertion that it "is distinguishable because there the teacher was *charged* with unprofessional conduct." (Maj. opn., *ante*, at p. 1448.) This is a difference without a principled distinction. (See *McKee* v. *Commission on Professional Competence* (1981) 114 Cal.App.3d 718, 721-722 [171 Cal.Rptr. 81] ["Failure to give the teacher such minimum written notice will deprive the district of authority to discharge a teacher on grounds of unprofessional conduct *or unfitness for service*."], citing *Feinberg*, italics added.) Plainly, under the logic of the majority opinion the correct action in *Feinberg* would have been to reverse the judgment not "in its entirety" but only insofar as it purported to justify the action of dismissal under the label of unprofessional conduct. The majority opinion would permit "astute counsel" to evade *De Caristo* and *Feinberg* by simply choosing to omit appending the label of unprofessional conduct to the acts alleged in the accusatory pleading.

This is not in keeping with our code pleading theory nor the thrust of these precedents. The majority opinion should have faced up to its disagreement with these precedents rather than purporting to distinguish them.

For the reasons given I would not take the majority's course.[3] The existing provisions of the Education Code under which *Feinberg* was decided are

---

[3]Upon further reflection I must also disavow the sentiment (p. 1452 of maj. opn., *ante*), to which I acquiesced in *Crowl* v. *Commission on Professional Competence, supra*, 225 Cal.App.3d 334, that the consideration that organized interest groups play a role in the

substantially similar to the present pertinent provisions of the Education Code. There is no indication in the present language that the rule of these precedents has been found unsatisfactory by the Legislature. The only textual indication is to the contrary. We are directed to construe the present statutes as restatements and continuations of their predecessors. (§ 3; Stats. 1959, ch. 2, § 3., p. 596.) In light of the grammar of Education Code section 44938, the backdrop of case law construction, and the ancillary indication in section 44031 that employees are to be warned of unprofessional conduct, there is only one tenable resolution of the ambiguity of section 44938 and that is the reading favoring Zuber.

I would reverse the judgment.

The petition of real party in interest for review by the Supreme Court was denied April 23, 1992. Mosk, J., and Panelli, J., were of the opinion that the petition should be granted.

---

enactment of the Education Code has a bearing on the reading of the enacted statutes. Indeed, there never was a legislative product more in need of "the gladsome light of jurisprudence." This suggested abdication of the function of judicial construction of these statutes rests upon the implicit view that the law is a treaty between interest groups. I cannot abide such a cynical view regarding the topic of *public* education. "The [Education Code] establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to effect its objects and to promote justice." (§ 2.)